**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

**No. 15-7013**

---

# United States Court of Appeals
# for the District of Columbia Circuit

---

Tawanda Jones,

*Plaintiff-Appellee*

v.

Law Office of David Sean Dufek and CACH, LLC,

*Defendants-Appellants*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 14-CV-00533-RJL, HON. RICHARD J. LEON

---

# *ADDENDUM*

**FOR APPELLANT**
CONSUMER JUSTICE ESQ
Radi Dennis
P.O. Box 57417
Washington, D.C. 20037
Telephone: (202) 579-1243
Facsimile: (202) 644-5228
rdennis@consumerjusticeesq.com
*Counsel for Plaintiff-Appellant*
*Tawanda Jones*

## TABLE OF CONTENTS
### Addendum

EXHIBITS……………………………………………………Exhibits
      Eddis Collection Letter……………………………….    Ex. A
      Panto Collection Letter………………………………    Ex. A

Council of the District of Columbia, Committee on Public Services and
Consumer Affairs, Report on Bill 1-253, at p. 6 (Mar. 24, 1976)
(hereinafter "*Committee Report* ")………………………………..    Ex. B

District of Columbia Consumer Credit Protection Act of 1971
Bill 92-200 (DC Debt collection law)………………………………    Ex. C

Fair Debt Collection Practices Act
("FDCPA")……………………………………………………    76

District of Columbia Debt Collection Law
("DCDCL")……………………………………………………    84

District of Columbia Consumer Protection and Procedures Act
("DCCPPA")………………………..……………………………    90

District Delinquent Debt Recovery Statute, D.C. Code § 350.10……    103

RULES……………………………………………………………    103
      Rule 49………………………..…………………………    103
      Rule 4.3………………………………………………...    104
      Federal Rules of Procedure…………………………….....    104

Unpublished Opinion…………………………………………………
      Ardino v. David Sean Dufek

# **Exhibits**

**PRESSLER AND PRESSLER, L.L.P.**
COUNSELLORS AT LAW
7 Entin Road
Parsippany, NJ 07054-5020
Off: (973) 753-5100
Fax: (973) 753-5353

NY Office
305 Broadway
9th Floor
New York, NY 10007
Off: (516)222-7929
Fax: (973)753-5353
Reply to [X] NJ Office [ ] NY Office

MAURICE H. PRESSLER(1930-2002)
SHELDON H. PRESSLER
-------
GERARD J. FELT
STEVEN P. MCCABE
LAWRENCE J. MCDERMOTT, JR.
-------
MITCHELL L. WILLIAMSON
THOMAS M. BROGAN
RALPH GULKO
JOANNE L. D'AURIZIO
CHRISTOPHER P. ODOGBILI

DALE L. GELBER
CRAIG S. STILLER*
STEVEN A. LANG
LESLIE L. PHIEFER
MICHAEL J. PETERS
RITA E. AYOUB

DARYL J. KIPNIS
DARREN H. TANAKA
MITCHELL E. ZIPKIN
DANIEL B. SULLIVAN
GINA M. LO BUE

-------------------------
* NY State License Only

OFFICE HOURS:
Monday-Thursday: 8am-9pm
Friday: 8am-7pm
Saturday: 9am-2pm

JEAN EDDIS
24 CANYON DR
BERLIN, NJ 080091412

02/24/11
P&P FILE E52303
Amount of the Debt $5,853.36

Dear JEAN EDDIS

This is to notify you that your account with FIRST NATIONAL BANK OF OMAHA , account # 4418940117081468 has been purchased by MIDLAND FUNDING LLC and has been placed with the firm of Pressler and Pressler, LLP for collection.

We shall afford you this opportunity to pay this debt immediately and avoid further action against you. Make your check or money order payable to Pressler and Pressler, LLP and include your File Number E52303 and remit to:

Pressler and Pressler, LLP 7 Entin Rd. Parsippany, NJ 07054-5020

Payment can be made on the website www.paypressler.com. We also accept Visa/Mastercard and American Express. If you choose this payment option return this letter along with:
Name as it appears on Credit Card_____/Street # & Zip_____
Expires ____/____ Credit Card #_____/Security Code_____
Amount $ _____ Signature _____

If you are unable to pay the balance in full and would like to discuss payment arrangements, please contact us at (888) 312-8600.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.

**PLEASE READ THE FOLLOWING PROVIDED TO YOU PURSUANT TO FEDERAL STATUTE:**

This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify this office within 30 days after receipt of this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receipt of this notice that the debt or any portion thereof is disputed, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your request in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.



P.O. Box 320006
Birmingham, AL  35222-1306

|||||||||||||||||||||||||||||||||

08/04/2010

27
*******************AUTO**MIXED AADC 350
ANTHONY PANTO
342 SPRUCE DR
BRICK, NJ 08723-5947

||||.|.||.|...|.|.||.||.|.||.|...|.||..|.|..|.|.||.|.|

| | |
|---|---|
| Creditor: | Household Finance Corp. |
| Product Group: | Consumer Finance Loans |
| Agency Identification Number: | HFC127152 |
| Account Balance: | $15,283.27 |
| Date of Notice: | 08/04/2010 |
| Creditor Account Number: | 63172800586529 |

Your account has been assigned to Professional Bureau of Collections of Maryland, Inc..

Notice is hereby given that the above referenced account has been referred to this office for collection activity. If you are represented by an attorney in regards to this debt, print his or her name, address and phone number on the stub of this letter and return it to our office.

We trust that your intention is to settle this long overdue debt, if you wish to make arrangements to pay this debt you may contact our office at (720) 200-0326 or (800) 270-9685.

Our office hours are: Monday - Thursday 7:00 am - 7:00 pm, Friday 7:00 am - 5:00 pm, Saturday 7:00 am - 11:00 am Mountain Time.

Professional Bureau of Collections of Maryland, Inc. 5295 DTC Pkwy, Greenwood Village, CO 80111

This notice is sent by a professional debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

Mr. Chris Velasquez
Debt Collector

If you would like to make your payment online, go to  www.pbccorp.com/modpay.asp

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debit is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor.

---

SEPARATE AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

Have you filed Bankruptcy     ☐ Yes    ☐ No
Case #_____  Discharge Date __/__/__
Please Note: If your current address differs from that shown above please indicate any changes below:

_____

_____

| | |
|---|---|
| Creditor: | Household Finance Corp. |
| Product Group: | Consumer Finance Loans |
| Agency Identification Number: | HFC127152 |
| Account Balance: | $15,283.27 |
| Date of Notice: | 08/04/2010 |
| Creditor Account Number: | 63172800586529 |
| Agency Phone Number: | (800) 270-9685 |

A 2.6% processing fee is added to all credit/debit card transactions
IF PAYING BY VISA OR MASTERCARD, FILL OUT BELOW

NAME AS IT APPEARS ON CREDIT CARD

BILLING ADDRESS

☐ VISA  ☐ MASTERCARD

| CARD NUMBER | EXP. DATE | AMOUNT |
|---|---|---|
| SIGNATURE | PHONE # REQUIRED | |

ANTHONY PANTO
342 SPRUCE DR
BRICK, NJ 08723-5947

Professional Bureau of Collections of Maryland, Inc.
PO Box 4157
Greenwood Village, CO 80155

230

# Council of the District of Columbia
# Report

City Hall, 14th and E Streets, N.W.     **Fifth Floor**     638-2223 or Government Code 137-3806

| | |
|---|---|
| To | All Councilmembers |
| From | John A. Wilson, Chairman, Public Services & Consumer Affairs Committee (Polly Shackleton & Willie Hardy, members) |
| Date | November 19, 1975 |
| Subject | Report on Bill #1-187, "District of Columbia Consumer Protection Procedures Act" |

OFFICE OF THE SECRETARY
DISTRICT OF COLUMBIA COUNCIL

The Committee on Public Services and Consumer Affairs supports Bill #1-187, "to provide consumers of the District of Columbia with procedures for the redress of improper trade practices, and for other purposes", which was introduced on September 23, 1975, by Councilmember John A. Wilson, and referred to the Committee on Public Services and Consumer Affairs.

This legislation will abolish the present Office of Consumer Affairs and establish an Office of Consumer Protection.

### Legislative History of OCA

The Office of Consumer Affairs, as part of the Executive Office of the Mayor, was authorized by Congress in Fiscal 1974, <u>P.L. 93-91</u> approved August 14, 1973. The Office was formally established by <u>Commissioner's Order 73-225</u> dated October 3, 1973.

### General History and Background

Starting in 1968, consumer groups in the District lobbied the Mayor and the Congress for an independent consumer protection agency in the District government, structured along the lines and authority of a "mini-FTC".

The "official" history of the Office--i.e., the history of attempts by the Executive Branch to establish such an agency--is depicted in the chart following.



EXHIBIT
B

J-3172-75

## DISTRICT OF COLUMBIA GOVERNMENT

## HISTORY OF CONSUMER AFFAIRS REQUESTS

| Fiscal Year | Amount Requested | Positions | Requesting Office | Congressional Action |
|---|---|---|---|---|
| 1969 | $  51,812 | 3 | Executive Office (Office of Community Renewal) | Denied |
| 1970 | (215,300) 50,000 165,300 | 19 | Joint Request Executive Office (Department of Licenses & Inspections) | Denied |
| 1971 | 50,000 | 3 | Executive Office | Denied |
| 1972 | 54,000 | 3 | Department of Economic Development | $29,400 and 3 positions approved.  Never implemented. |
| 1973 | 171,600 | 19 | Department of Economic Development | Request denied including the 3 previously approved positions.  Directed that city study needs and develop program other than in DED. |
| 1974 | 186,700 (9 mos.) | 14 | Executive Office | Granted |
| 1975 | 289,800 | 19 1/2 | Executive Office | Granted |

C 6 1 1 1 0 0 1 0 0

Report on Bill 1-253
Page 4
March 24, 1976

The OCA was:

- approved by Congress (in the FY 1974 budget) in August, 1973,

- established by the Mayor in October, 1973,

- activated (through appointment of a part-time--now full-time--Director) in November, 1973,

- opened approximately five months after Congressional approval.

In spite of its weak mandate, limited authority (especially compared to neighboring jurisdictions) and slow start, consumer groups supported the OCA at the FY 1975 budget hearings as an important step forward.

## Functions and Authority of OCA

Commissioner's Order 73-225 gave the Office the following functions and authority:

(1) Receive and evaluate consumer complaints.

(2) Administer and enforce the D.C. Consumer Retail Credit Regulation (City Council Regulation 71-18, June 1, 1971), and such other consumer protection regulations as may be assigned.

(3) Perform the functions vested in the Commissioner by the District of Columbia Consumer Protection Act of 1971 (P.L. 92-200).

(4) Recommend to the Mayor-Commissioner a Consumer Protection Plan for the District of Columbia.

(5) Recommend to the Mayor-Commissioner appropriate legislation or regulations necessary to protect and promote the interests of consumers.

(6) Promote fair business practices within the business community.

Report on Bill 1-253
Page 5
March 24, 1976

(7)  Conduct educational programs to assist consumers
and businessmen.

(8)  Establish liaison with consumer groups.

(9)  Be available to advise, consult, and cooperate in
the implementation of consumer protection policies
throughout the District Government.

(10) Conduct research surveys and special studies and
render annual reports on the status of consumer protection
efforts in the District of Columbia.

The Office of Consumer Affairs has virtually no
regulatory or enforcement authority except in two areas--the
enforcement of the D.C. Consumer Retail Credit Regulations
and indirectly, administration of the Consumer Goods Repair
Regulation.  The latter is enforced by the Board of Consumer
Goods Repair Services which works very closely with the OCA
and is dependent upon OCA's staff for administration of
licensing, investigation of repair complaints, etc.  In
addition, the Office administers the 1971 D.C. Consumer
Credit Protection Act which, because of the lack of any
enforcement provisions or rule-making, has in effect
remained unenforced.  Unlike the Montgomery County and
Prince George's County consumer protection agencies, the
D.C./OCA has no general authority to hold hearings, subpoena
witnesses, issue cease and desist orders, order restitution,
or order suspension or revocation of licenses, except under
the two regulations cited above.

Under the D.C. Consumer Retail Credit Regulation, the
OCA has the authority to hold administrative hearings,
subpoena witnesses, promulgate rules, issue cease and desist
orders, and order suspension of registration on complaints
which specifically violate that regulation.  The Board of
Consumer Goods Repair Services has similar authority to
enforce the Consumer Goods Repair Regulation, with adminis-
trative support from the OCA

Briefly, the three laws under the administration of OCA
provide the following:

(1)  D.C. Consumer Retail Credit Regulation (enacted by
     Council in September, 1971):  Requires registration

Report on Bill 1-253
Page 6
March 24, 1976

of all businesses which sell goods on credit and all sales finance companies which purchase retail credit paper. Requires strict credit disclosures, regulates credit practices, and provides for administrative penalties (deregistration, cease and desist orders, etc.) as well as criminal penalties for non-compliance.

(2) Consumer Goods Repair Regulation (enacted by Council in March, 1974): Requires the licensing of all automotive and electronic repair dealers (approximately 400) operating in the District (effective November, 1974); requires written estimates and final bills with extensive disclosures; prohibits a variety of unscrupulous practices; and provides for specific enforcement procedures, including hearings, cease and desist orders, denial, suspension and revocation of licenses and criminal penalties. Also requires the Board with assistance from the OCA, to hold hearings on the need to include other repair industries, starting with a hearing on major appliance, which was to be held no later than January 15, 1975.

(3) 1971 Consumer Credit Protection Act (enacted by Congress in December, 1971): This comprehensive Act regulating sale and financing of consumer goods in the District is largely "self-enforcing"--i.e., dependent on consumer civil action to affect enforcement. In two important areas, however,-- home solicitation and debtor harassment--specific prohibitions are provided and the Mayor is given enforcement powers, but no rules or provisions for enforcement (such as administrative procedures).

In addition to complaints under the purview of the regulations mentioned above, the Office receives and handles a variety of consumer complaints in areas where it has no enforcement authority. The method of disposition is normally conciliation or referral to other agencies.

Report on Bill 1-253
Page 7
March 24, 1976

## Philosophy and Programs of OCA

Until at least the end of 1975, the emphasis of the
D.C./OCA was away from consumer advocacy (forceful complaint
handling and enforcement of regulations). Instead the
priorities, as frequently stated by the Director, were on
"fostering good relations" between business and consumers
and on consumer education. This philosophy set the tone for
the Office and was reflected in program priorities.

The Office has produced and distributed many publi-
cations, sponsored several programs, and spoken on numerous
occasions to apprise District residents of their rights as
consumers and to give advice on certain consumer problems.

In April of 1974, OCA sponsored a Consumer Education
Awareness Conference in order that approximately 75
representatives of government, business and private groups
involved in consumer education could get together to
exchange ideas, outline major needs and coordinate their
efforts.

A two-day Food Conference was sponsored by OCA in
September, 1974, which was attended by approximately 400
District residents from all socio-economic levels. The
purpose of this Conference was to provide information on
ways to simultaneously stretch the consumer food dollar and
maintain good nutrition, and the cost to OCA was approxi-
mately $10,000.

One of the fundamental intentions of Bill 1-253 is to
shift the philosophy and emphasis of the Office to
individual complaint handling and enforcement of
regulations, and therefore to decrease the relative
importance of consumer education. While this bill continues,
on the same level, the Office's full authority to carry on a
consumer education program (sections 4(a)(7) and 7), it greatly
expands and specifies the powers and procedures for dealing with
complaints brought by consumers. The bill also provides for a
shift in emphasis within the Office's consumer education
work, from educating the general public to backing up the
enforcement programs of the Office (sections 4(a)(14),
6(h)(2), 6(o), and 7(a)(2) and (3)), much in the manner of
Federal Trade Commission publicity. Under Bill 1-253,
publicity of consumer protection legislative policies of the

Report on Bill 1-253
Page 8
March 24, 1976

District (section 7(a)(1)) would also take a high priority.
The Committee believes that by far the best possible
consumer education program will be the knowledge spread by
word of mouth among both consumers and business people that
a fair and forceful consumer protection office is ready to
redress improper trade practices for consumers.

### OCA's Position with Consumer Groups in the District

D.C. Power disseminated in August, 1975, a preliminary
report on the Office of Consumer Affairs which incorporates
the views of several consumer groups in the District.   The
report states:

> "The OCA serves as a place where consumer
> complaints are heard but not effectively acted
> upon.   The OCA sponsors programs that repeat-
> edly tell the consumer what he/she is doing
> poorly, and how to do it better.   But the OCA
> lacks programs that show the business
> community what changes they need to make.   The
> OCA has not offered significant consumer
> protection from fraudulent trade practices and
> has not adequately enforced consumer
> protection laws.   Further the functions of
> mediation and pacification of consumer
> desires, interests, and rights have taken
> precedence over an advocacy role."

Twenty-seven months after the establishment of the
D.C./OCA (at the time Bill 1-253 was introduced), there had
been no rules drafted or promulgated for administrative
enforcement procedures in spite of pressures from the
Corporation Counsel's Office (beginning in January, 1974
when the Corporation Counsel supplied OCA with sample rules
to use as guidelines).   In fact, enforcement action had been
initiated in only two cases--one by direct referral to
Corporation Counsel and one to the U.S. Attorney s office.
It should be noted that the procedures in section 6 of Bill
1-253 are sufficiently specific so that the procedural rule-
making powers in section 4(a)(10) will probably be needed
only sparingly.)

Report on Bill 1-253
Page 9
March 24, 1976

In implementing the Consumer Goods Repair Regulations, license application forms were mailed out only a few days before the license deadline.

The support and enthusiasm of consumer groups who had lobbied for the Office, waned considerably after the first year record of the Office, and continued to wane as time passed without improvement in the record of the Office.

OCA supported issues that consumer groups and consumers lobbied against and vice versa.  This is exemplified by the testimony of OCA at Council hearings on Auto Repossession (9/26/75) and the Universal Product Code System (7/23/75).

At the Auto Repossession hearings, the Director of OCA opposed the proposed legislation, and stated that there is no problem with auto repossession in the District.  He stated further that if consumers pay on time there would be no repossession.  To the contrary, representatives from finance companies, consumer groups, and victims of repossession acknowledged the problems of District residents with auto repossessions, and most favored the bill or the intent of the bill with suggestions.

The Universal Product Code System utilizes a computerized checkout system at the supermarkets, and eliminates individual price marking of items.  Many consumer organizations advocate requiring individual price marking.  OCA, however, testified in favor of waiting for the testing in the suburban stores to be completed before taking a position.  Unlike consumer representatives, the Office did not argue that conditions in the District are far different from those in the suburbs, and may create a greater need for individual price marking.

It has been stressed by many consumer groups in the District that OCA rarely, if ever, solicits input from these groups.  Second Tuesday meetings are held, where consumer groups and consumers can attend, but there is very little chance of any input from these groups.

Report on Bill 1-253
Page 10
March 24, 1976

### Establishment of a New Office

An attempt to reorganize the present Office of Consumer Affairs would be fruitless, as well as complex and cumbersome. It would be much more feasible to create a new Office and provide this Office with procedures and powers needed to efficiently deal with any given consumer problem. Bill 1-253 proposes to do just that.

Bill 1-253 creates an Office of Consumer Protection and yields to this office the following powers:

(1)  to investigate

(2)  to subpoena pertinent witnesses and papers

(3)  to mediate

(4)  to prosecute

(5)  to hold hearings

(6)  issue cease and desist orders

(7)  to preserve property involved in a case, when it might be destroyed or hidden before the case ends

(8)  to represent the consumer interest before other District Government agencies.

Further, the bill:

(1)  establishes a procedure to decide the factual validity of consumer complaints

(2)  provides an in-house General Counsel

(3)  provides an administrative law judge, having nearly all the powers of a judge in the courts, sitting in a contract case on a consumer matter

(4)  mandates that the Director have a refined, complete classification system for past cases, which helps to organize them in order to reveal issues that are troubling large numbers of District consumers

Report on Bill 1-253
Page 11
March 24, 1976

(5)  allows the Director to initiate complaint cases.

### Summary of Public Hearing

A public hearing was held on Bill 1-187 on November 5, 1975, at which the Committee received oral testimony from twelve persons.

Witnesses who favored the bill were:

Anne Brown, Americans for Democratic Action; Joel Bennett, D.C. Bar, Consumer Affairs Committee Substantive; Jim Vitarello, D.C. Public Interest Research Group; James Goldberg, Mid-Atlantic Food Council; Cathaleen Mullen, Legal Research for the Elderly; Barbara Gilliam, Board of Nursing; John Hechinger, representing his father John Hechinger, Chairman of the Consumer Affairs Task Force of the Democratic National Committee; and Dr. William H. Cooper, M.D., D.C. Medical Society.

Common issues raised by and viewpoints of, those persons favoring the Bill were:

(1)  the transfer of some, but not all of the licensing Boards and Commissions to the new Office of Consumer Protection (as section 3 of Bill 1-187 originally provided):

The general feeling was that all or none of the Boards and Commissions should be transferred, and that the Boards and Commissions should have equal representation of consumers and specialists.

(2)  appointment of administrative law judge by the Director:

It was felt that the administrative law judge should be independent of the Director, and appointed by the Mayor.

(3)  the agency should be independent, rather than a cabinet agency as provided for in the bill.  Such an amendment was never made to the bill.

Witnesses who addressed only specific sections of the bill were:

Report on Bill 1-253
Page 12
March 24, 1976


William Robertson, Director - Office of Consumer Affairs; Louise Wilson, President - Board of Cosmetology; and Bernard LePrince, Washington Hairdressers Cosmetologist Association.

Mr. Robertson of CCA stated that he favors Section 4 of the bill relating to the powers of the Office. He submitted for the record, a copy of a favorable evaluation of the OCA prepared by Associated Counselors International and costing OCA $9,600. The evaluation was released the day of the hearing, although it was completed in late September.

Mrs. Wilson and Mr. LePrince disapproved of consumer representation on the Boards and Commissions, stating that consumers are not knowledgeable enough to sit on the Boards/Commissions.

Mrs. Virginia Keith appeared on behalf of herself and opposed the bill in defense of the Director of the OCA She did not address the bill at all.

### Committee Amendments to Bill 1-253

The Committee voted two amendments to the bill, as follows:

(1) Page 6, subsection (g), second line: after "Acting Director", add "or Director"

(2) Page 8, paragraph (10), second and third lines: strike "or further defining unlawful trade practices proscribed in section 5 of this act,"

Amendment (1) would allow the Mayor to appoint either a Director or an Acting Director, after the bill takes effect and the new Office of Consumer Protection begins. The bill now required that an Acting Director be initially appointed, but this is unnecessary without Council confirmation.

Amendment (2) would deny the consumer protection agency the power to make substantive rules. The interpretation of unlawful trade practices would therefore depend on 3 main sources:

(A)  Future Council legislation

Report on Bill 1-253
Page 13
March 24, 1976


    (B)  The case-by-case decisions of the Office of
Consumer Protection.

    (C)  Court review - the bill provides for the
opportunity for judicial review after the Office takes final
action in a case.

    In regard to (B), it should be noted that section
6(m)(2) of the bill requires that a detailed index of all
finished cases be maintained for public view by the Office.
This will enable anyone to find out what are the Office's
interpretations of unfair trade practices.  Thus, there is
no need to grant the Office substantive rule-making powers.

<div align="center">

**Section-by-Section Analysis**

</div>

SECTION 1 -- TITLE

    The bill is entitled the "District of Columbia Consumer
Protection Procedures Act".


SECTION 2 -- DEFINITIONS AND PURPOSES

Sec. 2(a)  Definitions

    (1)  "person" is defined broadly to include any
individual or entity.

    (2)  "consumer" is used as both an adjective and a
noun throughout the bill.  As an adjective, the conventional
legal definition - "primarily for personal, household, or
family use" - is employed.  As a noun, a consumer is a
person on the "demand" side of a consumer transaction.

    (3)  "merchant" is a person on the "supply" side of
a consumer transaction.

    (4)  "complainant" is the consumer complaining
before the Office of Consumer Protection.  In some cases,
especially for elderly, very young, and mentally incompetent
consumers, another person, such as an adult child, parent,
or guardian, will act as complainant on behalf of the
consumer.

Report on Bill 1-253
Page 14
March 24, 1976

(5)  "respondent" is the merchant, or another merchant further along the supply chain who is deemed legally responsible under relevant substantive law, defending before the Office.

(6)  "trade practice" is any economic act between a consumer and a merchant.

(7)  "goods and services" are the subject matter of any trade practice, including any action normally considered only incidental to the supply of goods and services to consumers.

(8)  "Office" is the Office of Consumer Protection.

Sec. 2(b) The purposes of the bill are briefly stated in this subsection.

SECTION 3 -- OFFICE OF CONSUMER PROTECTION

Sec. 3(a) The Office of Consumer Protection is estab- lished as the principal consumer protection agency of the District of Columbia-Government.  Other agencies with consumer protection functions include the Department of Economic Development, the Department of Environmental Services, the Insurance Department, the Public Service Commission, the Department of Human Resources , and the Corporation Counsel.

Sec. 3(b) The Director of the Office is appointed by the Mayor.  The Director has the power to administer and exercise the powers of the Office of Consumer Protection, consistent with this bill and other District laws.

Sec. 3(c) A Section of Investigations is established within the Office, under the leadership of the Deputy Director of the Office, to investigate and attempt to conciliate all consumer complaint cases brought to the Office.

Sec. 3(d) A General Counsel, who must be a member of the District of Columbia Bar, will be appointed by the Director.

Report on Bill 1-253
Page 15
March 24, 1976

Sec. 3(e) One full-time administrative law judge shall be appointed by the Mayor for a three-year term to a Section of Hearings in the Office. The Director would hire any other personnel in the Section of Hearings.

Sec. 3(f) The present Office of Consumer Affairs is abolished, and all its functions, property, and personnel are authorized to be transferred to the Office of Consumer Protection. The civil service rights of OCA employees are protected.

Sec. 3(g) The Mayor shall appoint a Director or Acting Director as soon as the Office of Consumer Protection begins life. An Acting Director may do anything except hire or designate the Deputy Director, General Counsel, or Consumer education chief.

SECTION 4 -- POWERS OF THE OFFICE

Sec. 4(a) The Office of Consumer Protection is given power to:

(1)  investigate complaints, initiate its own investigations, hold hearings, and subpoena witnesses.

(2)  subpoena documents.

(3)  issue cease and desist orders to stop unlawful trade practices which are found to exist.

(4)  furnish information of violations of laws beyond its jurisdiction, to appropriate governmental enforcement agencies.

(5)  represent consumer interests before other government agencies.

(6)  work with federal agencies and private groups in the interests of District of Columbia consumers.

(7)  carry on a consumer education program.

(8)  encourage high standards of business conduct.

Report on Bill 1-253
Page 16
March 24, 1976


(9)  perform such other services as will aid District consumers.

(10) develop procedural rules.  Substantive rule-making powers are not delegated to the Office in the bill, in order that the Office may devote all its resources to complaint cases over the next few years.

(11) order third parties to take part in complaint cases.  For example, if a consumer complains against a District retailer concerning defective merchandise, but under the facts in the case and District law, a District or out-of-state manufacturer is responsible or potentially responsible for the defects, this provision allows the Office to force the manufacturer into the case.  This provision should be read in tandem with the "long-arm" jurisdiction of the Office, in Section 6(d)(3).

(12) settle complaint cases prior to a final judgment by the administrative law judge, by consent decrees enforceable in court.

(13) decide complaint cases, and provide contract, restitutionary, injunctive, and other remedies for proven violations.  This paragraph also defines the subject matter jurisdiction of the Office, in terms of the power to determine whether a person has executed a trade practice in violation of any law of the District and remedy any such violation determined to have been carried out, rather than in terms of any specific laws.  This subject matter juris-diction applies to section 6 complaints, to investigations and research and many other matters, but not to the responsibility to administer certain laws, as specified in section 4(b)(1) or in laws which may later be passed.  It would be a violation of this act to use the prosecutorial discretion powers in section 6(e)(4)(B) to effectively reduce the jurisdiction of the Office as provided in this paragraph.

(14) publicize its own actions consistent with the confidentiality provisions of section 6.

Sec. 4(b) The Office is responsible to:

Report on Bill 1-253
Page 17
March 24, 1976

        (1)  perform the functions of the Office of
Consumer Affairs in the consumer credit statute (P.L. 92-
200), the consumer credit regulation, and the consumer goods
repair regulation.

        (2)  file annual reports with the Mayor and
Council.

    Sec. 4(c)(1) The Office has no power to grant tort
damages.  Tort damages are most commonly granted for
negligent and intentional injuries.  The precise line
between tort and contract damages is left to the Office and
ultimately the courts to decide.

    Sec. 4(c)(2) The following businesses are exempt from
complaint cases under section 6:

            (A)  real estate rentals;

            (B)  public utilities and securities
brokerage;

            (C)  religion, law, and medicine;

            (D)  advertising.  This exemption applies only
to broadcasters and publishers, and only to the extent that
the broadcasters' and publishers' own goods or services are
not being advertised, and they are unaware that the adver-
tising is unlawful.

            (E)  government.  This means the Office may
not act as an ombudsman.

SECTION 5 -- UNLAWFUL TRADE PRACTICES

    Section 5.  In addition to other consumer-related laws
already on the books in the District, this section requires
that all merchants do not:

    (a) - (f) misrepresent or omit material facts, or use
misleading sales practices.

    (g)  disparage the goods or services of another by
falsehood.

Report on Bill 1-253
Page 18
March 24, 1976


(h)   advertise, without intending to sell in the manner
that is advertised or offered.

(i)   use bait-and-switch tactics.

(j) - (l) make misrepresentations concerning price
reductions or the need for a repair.

(m)   harass or threaten consumers.

n)    stop work on merchandise while it is still in a
condition not contracted for, or make a charge not
contracted for to return merchandise to a condition
contracted for.

(o)   unnecessarily replace parts when not requested.

(p)   state that repairs were made when they were not
made.

(q)   fail to give a consumer a copy of evidence of
indebtedness.

(r)   make contracts so unfair as to be "unconscionable".

(s)   represent that goods and services which are one's
own are someone else's.

(t)   falsely state the geographic origin of goods or
services.

(u)   falsely state that a previous specification for a
transaction has been met.

(v)   misrepresent an individual's authority to negotiate
final terms.

(w)   sell or distribute any goods in violation of
Consumer Product Safety Commission standards, rules, or
procedures.

(x)   sell goods in violation of Uniform Commercial Code
warranties, or those provided in federal law (such as the
recently enacted Magnuson-Moss Act, P.L.  93-637).  The
phrase "sell consumer goods in a...manner not consistent

Report on Bill 1-253
Page 19
March 24, 1976


with that warranted" includes breach of warranty, such as
where service of goods sold is warranted.


SECTION 6 -- COMPLAINT PROCEDURES

The bill is designed so that nearly all the efforts of
the Office of Consumer Protection will be spent in handling
consumers' complaints in accordance with this section.

Sec. 6(a) permits a complaint to be filed in writing by
the consumer, or orally to an Office investigator who may
then reduce it to writing.  A full and complete description
is permitted but not required.  The words "plainly
describing" are similar to those in the Federal Rules of
Civil Procedure, and underscore the simplicity of the
requirements of the initial complaint, the purpose of which
is essentially to give the Office enough information to
initiate its investigation.  The Director may further define
the information to be taken.

Sec. 6(b)(1) provides for the first step in handling any
complaint finding out what happened.  Sec. 6(b), in the last
paragraph, goes on to require that the merchant complained
against be contacted and thus given a chance to explain the
occurrence.  A thorough investigation must be made, and no
sources of information are foreclosed by the bill.  A
relevant board or commission may, but need not, be
consulted.

Sec. 6(b)(2) provides for an initial determination of
whether the trade practice was illegal under District law.
The phrase "other law" includes executive and administrative
orders, and common law.  The word "law" in this section
means the same as it does in section 4(a)(13) and throughout
the bill.

Sec. 6(c) provdes for informing another appropriate
government agency of a suspected law violation.  The Office
would not stop working on a case pursuant to this section.
Temporary consultations on complaint cases with other
agencies are also provided for in the bill, in section
4(a)(6).

Report on Bill 1-253
Page 20
March 24, 1976

Sec. 6(d) requires the Office to complete the investigation, and initial factual and legal determination of whether there are reasonable grounds to believe a trade practice subject to the Office's enforcement powers was executed, within 60 days. The respondent and complainant must be informed of the determination, and if part or all of the complainant's allegations are dismissed, such dismissal must be explained to him or her in writing. Sec. 6(d) goes on to list the possible reasons for dismissal:

(1) Outside the jurisdiction of the Office. Such problems would be: trade practice beyond any District law; exemptions provided in section 4(c)(2); a trade practice, consumer, or merchant, as defined in section 2(a), is not involved. Also, a case that is filed more than 3 years after the trade practice occurred could be dismissed.

(2) The facts indicate that no law was violated.

(3) The respondent cannot be found, or is beyond the personal jurisdiction of the Office, under the standards of D.C. Code Title 13, Subchapter 4 - II.

(4) The Office is aware that the complainant has dropped the case.

(5) The Office is aware that the respondent and complainant have settled the case.

(6) The complainant can no longer be found.

Sec. 6(e) requires the Office to try to settle every case in which the investigation indicates the respondent will be subject to the enforcement powers of the Office. If the complainant refuses to take part in settlement discussions at this point in the case, the Director may dismiss the complaint pursuant to section 6(h)(2). If the Office signs the settlement accord, it becomes a "consent decree" enforceable in court. If settlement is not possible in 45 days, the case should be referred to the Section of Hearings (Administrative Law Judge) for formal adjudication, unless, in the intervening period, the facts change or the Director makes a new determination that a case should be dismissed under the standards in section 6(d), or determines, under the standards in section 2(b), that the

Report on Bill 1-253
Page 21
March 24, 1976


Office should not proceed with the case. If the Board of
Consumer Goods Repair Services has jurisdiction, formal
adjudication should be referred to that Board. The words
"brief and plain statement" in section 6(e)(3) once again
refer to the simple pleading requirements of the Federal
Rules of Civil Procedure.

Sec. 6(f) provides for an expeditious, fair, and formal
hearing before the Administrative Law Judge, who thereafter
decides the case. Based on the investigation having found
in favor of the consumer, the Director replaces the
complainant as the moving party, and the General Counsel
would present the case for the Director. There is no
requirement of proof of any intention.

Sec. 6(g) provides that the Section of Hearings, if it
finds in favor of the complainant (Director), shall:

(1) issue a cease and desist order to stop the
particular trade practice in violation of the law, either as
to the complainant or as to everyone in the future.

(2) order redress for the consumer through
contract damages, money back, repairs to be done, or any
method which is fair and effective.

(3) issue a judgment in the form of counts of
violation of the law.

The Section of Hearings may also:

(4) charge the respondent for the Office's costs
in dealing with the case. The costs of "hearing" include
all the labor and non-labor costs of both prosecution and
adjudication.

(5) make further findings or orders, of all kinds.

(6) refer the case for further proceedings
concerning license revocation or discipline to an appro-
priate board or commission. The Office of Consumer
Protection may act concerning a license only if there is no
such board or commission. The boards and commissions
generally have no power to order the money damages and
injunctive relief which the Office has the power to do, so

Report on Bill 1-253
Page 22
March 24, 1976


there is no duplication of functions proposed in this bill
so far as the boards and commissions go.

Sec. 6(h)(1) provides rules for consent decrees made
between the Office, respondent, and complainant. Such
decrees may apply to and settle an entire case, or only
specified parts of it. A decree may:

(A)  contain the types of redress, penalties,
and orders permitted in the final decision of a case.

(B)  not allege a violation of law.

(C)  contain promises by the merchant
concerning future practices.

(D)  stop prosecution of the case.

(E)  provide for payment of money in lieu of
civil fines to the Office, and have other provisions.

Sec. 6(h)(2) provides for informal and confidential
settlement procedures administered by the Office.

Since a consent decree is essentially a contract to
settle a case, sec. 6(h)(3) permits modifications agreed to
by all three parties.

Section 6(i)(1) provides for an appeal to the District
of Columbia Court of Appeals whenever all parts of a
complaint case are finally decided by the Office.

Section 6(i)(2) permits an appeal to the Superior Court
of the District of Columbia when the Section of Hearings
acts, under section 6(j), on an application for an order to
preserve property during the pendency of a case in the
Office.

Section 6(i)(3)(A) sets a civil fine, collectible only
in court, of up to $1000.00, for an unlawful trade practice
found by the Office, and for violation of an order or
consent decree made by the Office. The fines are payable
strictly to the Office, but any party aggrieved by violation
of a cease and desist or other order, or consent decree, may
ask the court to collect such a fine.

Report on Bill 1-253
Page 23
March 24, 1976

Section 6(i)(3)(B) provides the Superior Court as the forum of first instance for enforcement and collection, at the suit of the Office, respondent or complainant, of the various orders, decrees, and civil fines which are produced pursuant to section 6.

Section 6(i)(4) provides that the Corporation Counsel will represent the Office in court matters concerning complaint cases.

Sec. 6(j) permits the Section of Hearings, at the behest of the Director, to order that the property or the status quo in a case before the Office be preserved.

Sec. 6(k)(1) permits a consumer to go directly to court when injured by a trade practice, without going through the Office first. Treble damages and reasonable attorneys' fees are recoverable in order to encourage the private bar to take such cases. Punitive damages are also recoverable, and the standards the courts would use in determining them are the amount of actual damages awarded, the frequency, persistence, and degree of intention of the merchant's unlawful trade practice, and the number of consumers adversely affected. The court would not be limited to these types of relief, however.

Sec. 6(k)(2) states that an injured consumer may bring another type of action or file a complaint with another agency if he or she deems that to be appropriate. The subject matter jurisdiction of the Office, as stated in section 4(a)(13), may coincide with, and does not limit, that of other agencies of the District Government. On the other hand, the powers of other agencies may not be construed to detract from the powers of the Office, under any provision of the bill, to obtain relief for consumers and compliance with District laws.

Sec. 6(k)(3) makes orders of the Section of Hearings admissible in judicial and administrative proceedings.

Sec. 6(k)(4) requires that, if a complainant has a case before the Office over a trade practice out of which the respondent is seeking to collect a debt in a suit in the courts, the case before the Office shall be decided first.

Report on Bill 1-253
Page 24
March 24, 1976

Sec. 6(1) states certain general principles for the Office in deciding complaint cases. The first sentence says that all of the section 4 powers of the Office, such as the subpoena power and the power to make all types of orders not specifically prohibited in the bill - are generally available to the Office, or the appropriate Section of the Office as specified in Section 6, at all times in processing complaint cases. The last sentence allows other consumer protection enforcement laws to continue side-by-side with this one, while leaving the procedures and sanctions provided by section 6 whenever the Office deals with or follows up on a complaint case.

Sec. 6(m)(1) requires the Office to explain its final actions in plain English to the complainant and respondent, whenever requested.

Sec. 6(m)(1) requires the Office to maintain a public index of all its final actions by names of complainant and respondent, industry, nature of complaint, and final disposition.

Sec. 6(n) requires that money earned by the Office for costs and civil fines in complaint cases goes to the General Fund of the District Government.

Sec. 6(o) requires that the Office keep each complaint case in confidence until its final action, except that hearings before the administrative law judge would be public.

Sec. 6(p) permits the Director to be a complainant in a case. In such a matter, the investigation may precede the filing of the case, but the responsibility to try to conciliate the case would remain. The Director would often have research and investigation data, gathered in the course of carrying out section 6 and the powers in section 4(a), which would support the filing of such cases. Consumers and merchants could enforce orders and consent decrees arising out of such cases.

Sec. 6(q) assures witnesses and parties to the case that they may have their own private counsel present to advise them.

Report on Bill 1-253
Page 25
March 24, 1976


### SECTION 7 -- CONSUMER EDUCATION

There shall be a Section of Consumer Education in the Office to carry on a consumer education program. The section chief is not required to be full-time.


### SECTION 8 -- ADVISORY COMMITTEE ON CONSUMER PROTECTION

An Advisory Committee consisting of 11 members - 4 merchants (as defined in section 2(a)(3)) and 7 consumer advocates - will be appointed by the Mayor. The Committee will monitor the operations of the Office, and carry on research to suggest broad directions for the Office.


### SECTION 9 -- SEVERABILITY

If any section or paragraph is held unconstitutional or otherwise invalid, the rest of this legislation would remain in full force and effect.


### SECTION 10 -- EFFECTIVE DATE

This act will take effect after the regular period of Congressional review.


### Fiscal Impact

In comparison to current employment in the Office of Consumer Affairs, the bill would combine two positions, a GS-14 Deputy Director and a GS-11 Chief Advisor, into one Deputy Director-Chief of Section of Investigations. It would add a General Counsel and an Administrative Law Judge. It does not require a full-time Chief of the Section of Consumer Education, or prevent the occupant of that position from working on complaint cases. Thus, the bill requires a net addition of between one-half and a whole senior position. The existing support staff, the existing space, furniture and materials in the present OCA main office at 1407 L Street, N.W., and the existing non-personnel funding in the OCA budget, is sufficient for at least the individual

Report on Bill 1-253
Page 26
March 24, 1976

casework which will be concomitant with the net addition of
employment at the senior level. The bill does not state the
GS levels of the Director, Deputy Director, General Counsel,
Administrative Law Judge, or Chief of the Section of
Consumer Education. Therefore, it is impossible to place a
precise price tag on the net employment increase required by
the bill.

Sections 6(a)(4), 6(h)(1)(E), 6(i)(4), and 6(n) require
or permit certain fines, operating costs, or payments in
lieu of fines and costs, to be paid to the Office and
thereby to the General Fund of the District. Any estimate
of the income to be derived through these provisions would
be speculative; but the experience of the Montgomery County
Office of Consumer Affairs is highly favorable in this
regard.

In calculating the fiscal impact of the whole bill, such
income must be considered as an offset to the salary and
benefits for the required net employment increase. Thus,
the net fiscal impact of Bill 1-253 is likely to be between
+$15,000 and -$15,000 each year for the next five years.

## Executive Comments

As of March 20, 1976, no official comment on Bill 1-253
had been made on behalf of the Mayor.

Report on Bill 1-253
Page 27
March 24, 1976


Extensive discussions with the Executive Branch took place concerning Bill 1-187, the predecessor of this bill. Highlights of these discussions were:

| | |
|---|---|
| November 5, 1975 | Testimony by Director, OCA, at hearing on bill |
| November 18, 1975 | Executive comments |
| December 16, 1975 | Alternative bill (#1-222) introduced on behalf of the Mayor<br>Request for further meetings |
| January 12, 1976 | Further executive comments |
| February 10, 1976 | Mayor's veto message |

The veto was based on the grounds that the requirements of Council confirmation and District residency for the Director, General Counsel, and Administrative Law Judge, were illegal.

85 STAT. ]    PUBLIC LAW 92-200–DEC. 17, 1971                    665

(f) Central Valley project, Delta Division, Montezuma Hills unit in southern Solano County, California.

(g) Gallup project in McKinley, Valencia, and San Juan Counties in New Mexico.

(h) Modification of the Seminoe Dam, Kendrick project, Wyoming.

(i) Butte Valley division, Klamath project in the Klamath River Basin, Klamath County, Oregon, and Siskiyou County, California.

(j) Billings Municipal Water Supply Unit, Yellowstone Division, Pick-Sloan Missouri River Basin program, Montana.

Approved December 15, 1971.

<mark>Public Law 92-200</mark>

### AN ACT

To amend certain provisions of subtitle II of title 28, District of Columbia Code, relating to interest and usury.

<div style="text-align:right">

December 17, 1971
[S. 1938]

</div>

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the text of section 28–3301 of subtitle II of title 28, District of Columbia Code, is amended to read as follows:

"Except as otherwise provided in section 28–3308, and chapter 36 of this subtitle, the parties to an instrument in writing for the payment of money at a future time may contract therein for the payment of interest on the principal amount thereof at a rate not exceeding 8 per cent per annum."

District of Columbia Consumer Credit Protection Act of 1971.
78 Stat. 675.
*Infra.*
*Post,* p. 666.

SEC. 2. The text of clause (2) in the first sentence of section 28–3303 of subtitle II of title 28, District of Columbia Code, is amended to read as follows:

"(2) in writing, to pay a greater rate than is permitted under section 28–3301 or 28–3308 or under chapter 36 of this subtitle, the creditor shall forfeit the whole of the interest so contracted to be received."

78 Stat. 675.

SEC. 3. Chapter 33 of subtitle II of title 28, District of Columbia Code, is amended by adding the following section:

84 Stat. 828.
D.C. Code 28-3301.

### "§ 28–3308. Finance charge on direct installment loans

"(a) On a loan in which the principal does not exceed $25,000 (other than a loan directly secured on real estate or a direct motor vehicle installment loan covered by chapter 36 of this subtitle) to be repaid in equal or substantially equal monthly, or other periodic, installments, any federally insured bank or savings and loan association doing business in the District of Columbia may contract for and receive interest at the rate permitted under this chapter or, in lieu of such interest, a finance charge, which, if expressed as an annual percentage rate, does not exceed a rate of 11½ percent per annum on the unpaid balances of principal. This section does not limit or restrict the manner of contracting for the finance charge, whether by way of discount, add-on or simple interest, so long as the annual percentage rate of the finance charge does not exceed that permitted by this section.

"(b) If such installment loan is precomputed,


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO


EXHIBIT
C

666                    PUBLIC LAW 92-200–DEC. 17, 1971                    [85 Stat.

"(1) the finance charge may be calculated on the assumption that all scheduled payments will be made when due, and

"(2) except as provided in subsection (c), upon prepayment in full of the unpaid balance of a precomputed direct installment loan, refinancing, or consolidation, an amount not less than the unearned portion of the finance charge calculated according to this section shall be rebated to the debtor. If the rebate otherwise required is less than $1, no rebate need be made.

"(c) Upon prepayment in full of such direct installment loan other than a refinancing or consolidation, whether or not precomputed, the lender may collect or retain a minimum charge within the limits stated in this section if the finance charge earned at the time of prepayment is less than any minimum charge contracted for. The minimum charge may not exceed the smaller of the following: (1) the amount of the finance charge contracted for, or (2) $5 in a transaction which had a principal of $75 or less, or $7.50 in a transaction which had a principal of more than $75.

"(d) The unearned portion of the finance charge is a fraction of the finance charge of which the numerator is the sum of the periodic balances scheduled to follow the computational period in which the prepayment occurs, and the denominator is the sum of all periodic balances under either the related loan agreement or, if the balance owing resulted from a refinancing or a consolidation, under the related refinancing agreement or consolidation agreement.

<div style="margin-left:2em">Definitions.<br>84 Stat. 1126.</div>

"(e) As used in this section, 'finance charge', and 'annual percentage rate' shall have the respective meanings under the provisions of the Truth-in-Lending Act (82 Stat. 146 et seq.; 15 U.S.C. 1601 et seq.) and the regulations and interpretations thereunder; and 'federally insured bank or savings and loan association' means an insured bank as defined in section 3 of the Federal Deposit Insurance Act or an 'insured institution' as defined in section 401 of the National Housing Act."

<div style="margin-left:2em">64 Stat. 873.<br>12 USC 1813.</div>

<div style="margin-left:2em">48 Stat. 1255.<br>12 USC 1724.<br>78 Stat. 667.<br>D.C. Code 28-2101.</div>

Sec. 4. Subtitle II of title 28, District of Columbia Code, is amended by adding at the end thereof the following chapters:

## "Chapter 36.—DIRECT MOTOR VEHICLE INSTALLMENT LOANS

### "§ 28–3601. Direct motor vehicle installment loans

<div style="margin-left:2em">77 Stat. 771.<br>D.C. Code 40-901.</div>

"The provisions of the Act approved April 22, 1960 (Public Law 86–431, 74 Stat. 69; D.C. Code, 1967 ed., chapter 9 of title 40), covering installment sales of motor vehicles, as amended, and the regulations issued thereunder, shall apply to the extent appropriate to, a direct installment loan, secured by a security interest in a motor vehicle, made by a federally insured bank or savings and loan association doing business in the District of Columbia, subject to section 28–3602.

<div style="margin-left:2em">Post, p. 667.</div>

**"§ 28–3602. Finance charge**

"Such a bank or savings and loan association may contract for and receive interest at the rate provided for in chapter 33 or, in lieu of such interest, a finance charge which, if expressed as an annual percentage rate, does not exceed a rate of 11½ percent per annum on the unpaid balances of principal.

*Ante,* p. 665.

**"§ 28–3603. Definitions**

"As used in this chapter, 'finance charge' and 'annual percentage rate' shall have the respective meanings under the provisions of the Truth-in-Lending Act (82 Stat. 146 et seq.; 15 U.S.C. 1601 et seq.) and the regulations and interpretations thereunder; and 'federally insured bank or savings and loan association' means an insured bank as defined in section 3 of the Federal Deposit Insurance Act or an 'insured institution' as defined in section 401 of the National Housing Act.

84 Stat. 1126.

64 Stat. 873.
12 USC 1813.

48 Stat 1255.
12 USC 1724.

## "Chapter 37.—REVOLVING CREDIT ACCOUNTS

**"§ 28–3701. Definitions**

"As used in this chapter—

    "(1) 'revolving credit account' means an arrangement between a seller or financial institution and a buyer pursuant to which (A) the seller may permit the buyer to purchase goods or services on credit either from the seller or by use of a credit card or other device, whether issued by the seller or a financial institution, (B) the unpaid balances of amounts financed arising from purchases and the credit service and other appropriate charges are debited to an account, (C) a credit service charge if made is not precomputed but is computed on an outstanding unpaid balance of the buyer's account from time to time, and (D) the buyer has the privilege of paying the balances in full or in installments.

    "(2) 'credit service charge' means the sum of (A) all charges payable directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to the extension of credit, including any of the following types of charges which are applicable: time price differential, service, carrying or other charge, however denominated, premium or other charge for any guarantee or insurance protecting the seller against the buyer's default or other credit loss; (B) charges incurred for investigating the collateral or credit-worthiness of the buyer or for commissions or brokerage for obtaining the credit, irrespective of the person to whom the charges are paid or payable, unless the seller had no notice of the charges when the credit was granted.

    "(3) 'seller' means a person engaged in the District of Columbia in the business of selling goods or services to retail buyers.

    "(4) 'buyer' means a person who buys goods or obtains services

from a seller pursuant to a retail credit sale and not principally for the purpose of resale; and includes a person who enters into a prior agreement with a financial institution whereby the latter agrees to pay the debts of the buyer as they accrue at various retail sellers, designated by the financial institution, in consideration of the buyer paying to the financial institution the cash sales price plus the credit service charge on the purchase.

"(5) 'person' includes any individual, partnership, corporation, association, trust, joint stock company, or any other group of persons however organized.

"(6) 'financial institution' means a person who enters into an agreement with a buyer whereby the former agrees to extend credit to the buyer and to apply it as directed by the buyer pursuant to a credit card issued to the buyer by the financial institution; and this term includes any federally insured bank as defined in section 3 of the Federal Deposit Insurance Act doing business in the District of Columbia.

64 Stat. 873.
12 USC 1813.

### "§ 28–3702. Amount and computation of credit service charge

"(a) The seller or financial institution may contract for the payment by the buyer of a credit service charge not exceeding that permitted by this section.

"(b) A credit service charge may be made in each billing cycle. For the purpose of computing the outstanding balance subject to the credit service charge, (1) the outstanding balance on any day shall consist of an amount which shall not exceed the sum of the total charges to the account less the amounts paid or credited to the account prior to such day, or (2) the outstanding balance may be computed by the average daily balance method. The credit service charge may also be computed for all outstanding balances within a range of not in excess of $10 on the basis of the median amount within such range if as so computed such credit service charge is applied to all outstanding balance within such range.

"(c) If the billing cycle is monthly, the charge may not exceed 1½ percent of that part of the outstanding balance which is $500 or less and 1 percent on that part of this amount which is more than $500. If the billing cycle is not monthly, the maximum charge is that percentage which bears the relation to the applicable monthly percentage as the number of days in the billing cycle bears to thirty. For the purposes of this section, a variation of not more than four days from month to month is 'the same day of the billing cycle'.

### "Chapter 38.—CONSUMER PROTECTIONS

### "§ 28–3801. Scope—Limitation on agreements and practices

"This chapter applies to actions to enforce rights arising from a consumer credit sale or a direct installment loan.

## "§ 28–3802. Definitions

"As used in this chapter—

"(1) 'revolving credit account' means a revolving credit account as defined in section 28–3701 of this subtitle.

*Ante, p. 667.*

"(2) 'consumer credit sale' means a sale of goods or services in which—

"(A) credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;

"(B) the buyer is a natural person;

"(C) the goods or services are purchased primarily for a personal, family, household, or agricultural purpose;

"(D) either the debt is payable in installments or a finance charge is made; and

"(E) the amount financed does not exceed $25,000.

The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

"(3) 'direct installment loan' means a direct installment loan as that term is used in section 28–3308 of this subtitle and does not include a loan secured on real estate or a direct motor vehicle installment loan covered by chapter 36 of this subtitle.

*Ante, p. 665.*

*Ante, p. 666.*

"(4) 'cross collateral' means an arrangement wherein a seller in a 'consumer credit sale' secures a debt arising from the sale by contracting for a security interest in other property if as a result of a prior sale the seller has an existing security interest in the other property. The seller may also contract for a security interest in the property sold in the subsequent sale as a security for the previous debt.

## "§ 28–3803. Balloon payments

"With respect to a consumer credit sale or direct installment loans except for revolving credit accounts:

"(1) No creditor shall at any time enter into an agreement which contains or anticipates a schedule of payments under which any one payment is not equal or substantially equal to all other payments, excluding any final payment which is less than the average of previous payments or any down payment received by the creditor contemporaneously with or prior to the consummation of the transaction, or under which the intervals between any consecutive payments differ substantially.

"(2) Notwithstanding any provision of this section, where a consumer's livelihood is dependent upon seasonal or intermittent income, the parties may agree in a separate writing that one or more payments or the intervals between one or more payments may be reduced or expanded in accordance with the needs of the consumer if such payments are expressly related to the consumer's income. The separate writing shall contain a conspicuous notice directly above the signature line stating: 'I waive my right to have all payments to be made under this agreement in substantially equal amounts'.

"(3) In the event that the provisions of paragraph (2) apply, the consumer shall have the right at any time, without further cost or obligation, to revise the schedule of payments to conform both as to amounts and intervals to the average of all installments and intervals.

670                     PUBLIC LAW 92-200–DEC. 17, 1971              [85 Stat.

### "§ 28–3804. Assignment of earnings and authorization to confess judgment prohibited

"(a) A creditor may not take an assignment of earnings of the consumer for payment or as security for payment of an obligation arising out of a consumer credit sale or direct installment loan.

"(b) A creditor may not take or accept from the consumer a warrant or power of attorney or other authorization for the creditor, or other person acting on his behalf, to confess judgment arising out of a consumer credit sale or direct installment loan.

*Post*, p. 675.

"(c) An assignment of earnings or an authorization in violation of this section is subject to the provisions of section 28–3813(d)(1) of this subtitle.

### "§ 28–3805. Debts secured by cross-collateral

*Ante*, p. 667.

"(a) If debts arising from two or more consumer credit sales other than sales pursuant to a revolving charge account (§ 28–3701), are secured by cross-collateral, or consolidated into one debt payable on a single schedule of payments, and the debt is secured by security interests taken with respect to one or more of the sales, payments received by the seller after the taking of the cross-collateral or the consolidation are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been first applied to the payment of the debts arising from the sales first made. To the extent debts are paid according to this section, security interests in items of property terminate as the debts originally incurred with respect to each item are paid.

"(b) Payment received by the seller upon a revolving charge are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of credit service charges in the order of their entry to the account and then to the payment of debts in the order in which the entries to the account showing the debts were made.

"(c) If the debts consolidated arose from two or more sales made on the same day, payments received by the seller are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of the smallest debt.

### "§ 28–3806. Attorney's fees

"With respect to a consumer credit sale or direct installment loans the agreement may provide for the payment by the consumer of reasonable attorney's fees not in excess of 15 per centum of the unpaid balance of the obligation.

### "§ 28–3807. Negotiable instruments prohibited

"(a) In a consumer credit sale, no seller shall take or otherwise arrange for the consumer to sign an instrument, except a check, payable 'to order' or 'to bearer' as evidence of the credit obligation of the consumer.

"(b) Any holder of an instrument prohibited by subsection (a) of this section 28–3807, if he takes it with knowledge of a violation of this section, takes it subject to all claims and defenses of the consumer up to the amount owing on the transaction total at the time of the assignment.

### "§ 28–3808. Assignees subject to defenses

"(a) With respect to a consumer credit sale, an assignee of the rights of the seller or lessor is subject to all claims and defenses of the consumer or lessee arising out of the sale notwithstanding any terms or agreements to the contrary, but the assignee's liability under this section may not exceed the amount owing to the assignee at the time of the assignment.

"(b) Rights of the consumer or lessee can only be asserted as a matter of defense to or set-off against a claim by the assignee.

## "§ 28–3809. Lender subject to defenses arising from sales

"(a) A lender who makes a direct installment loan for the purpose of enabling a consumer to purchase goods or services is subject to all claims and defenses of the consumer against the seller arising out of the purchase of the goods or service if such lender acts at the express request of the seller, and—

"(1) the seller participates in the preparation of the loan instruments, or

"(2) the lender is a person or organization controlled by or under common control with the seller, or

"(3) the seller receives or will receive a fee, compensation, or other consideration from the lender for arranging the loan.

"(b) The lender's liability under this section may not exceed the amount of the loan. Rights of the debtor can only be asserted affirmatively in an action to cancel and void the sale from its inception, or as a matter of defense to or set-off against a claim by the lender.

## "§ 28–3810. Referral sales

"With respect to a consumer credit sale, the seller or lessor may not give or offer to give a rebate or discount or otherwise pay or offer to pay value to the buyer or lessee as an inducement for a sale or lease in consideration of his giving to the seller or lessor the names of prospective purchasers or lessees, or otherwise aiding the seller or lessor in making a sale or lease to another person, if the earning of the rebate, discount, or other value is contingent upon the occurrence of an event subsequent to the time the buyer or lessee agrees to buy or lease. If a buyer or lessee is induced by a violation of this section to enter into a consumer credit sale, the agreement is unenforceable by the seller or lessor and the buyer or lessee, at his option, may rescind the agreement or retain the goods delivered and the benefit of any services performed, without any obligation to pay for them.

## "§ 28–3811. Home solicitation sales

"(a) As used in this section, 'home solicitation sale' means a cash sale or a consumer credit sale of goods, other than farm equipment, or services in which the seller or a person acting for him engages in a personal solicitation of the sale at or near a residence of the buyer and the buyer's agreement or offer to purchase is there given to a seller or a person acting for him. It does not include a sale made pursuant to a preexisting revolving credit account or prior negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale.

"(b) Except as provided in subsection (f), in addition to any right otherwise to revoke an offer, the buyer has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase which complies with this section.

"(c) Cancellation occurs when the buyer gives written notice of cancellation to the seller at the address stated in the agreement or offer to purchase.

"(d) Notice of cancellation, if given by mail, is given when it is deposited in a mail box properly addressed and the postage prepaid.

"(e) Notice of cancellation given by the buyer need not take a particular form and is sufficient if it indicates by any form of written expression the intention of the buyer not to be bound by the home solicitation sale.

"(f) The buyer may not cancel a home solicitation sale if the buyer requests the seller to provide goods or services without delay because of an emergency, and

672                    PUBLIC LAW 92-200—DEC. 17, 1971                [85 STAT.

"(1) the seller in good faith makes a substantial beginning of performance of the contract before the buyer gives notice of cancellation, and

"(2) in the case of goods, the goods cannot be returned to the seller in substantially as good condition as when received by the buyer, and

"(3) the buyer has signed separately the following notice which appears under the conspicuous caption: 'WAIVER OF RIGHT TO CANCEL' and reads as follows: 'Because of an emergency I waive any right I may have to cancel this home solicitation sale'.

"(g)(1) In a home solicitation sale, unless the buyer requests the seller to provide goods or services without delay in an emergency, the seller must present to the buyer and obtain his signature to a written agreement or offer to purchase which designates as the date of the transaction the date on which the buyer actually signs and contains a statement of the buyer's rights which complies with paragraph (2) of this subsection.

"(2) The statement must—

"(A) appear under this conspicuous caption: 'BUYERS RIGHT TO CANCEL', and

"(B) read as follows:

"'If this agreement was solicited at or near your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you signed this agreement. The notice must be mailed to:————————————————

————————————————————————

(insert name and address of seller)

If you cancel, the seller may not keep any of your cash down payment.'

"(3) Until the seller has complied with this section the buyer may cancel the home solicitation sale by notifying the seller in any manner and by any means of his intention to cancel.

"(h)(1) Except as provided in this section, within ten days after a home solicitation sale has been canceled or an offer to purchase revoked the seller must tender to the buyer any payments made by the buyer and any note or other evidence of indebtedness. A provision permitting the seller to keep all or any part of any payment, note, or evidence of indebtedness is in violation of this section and unenforceable.

"(2) If the down payment includes goods traded in, the goods must be tendered in substantially as good condition as when received by the seller. If the seller fails to tender the goods as provided by this section, the buyer may elect to recover an amount equal to the trade-in allowance stated in the agreement.

"(3) The seller is not entitled to retain a cancellation fee.

"(4) Until the seller has complied with the obligations imposed by this section the buyer may retain possession of goods delivered to him by the seller and has a lien on the goods in his possession or control for any recovery to which he is entitled.

"(i)(1) Except as provided by the provisions on retention of goods by the buyer (subsection (h)(4) of this section), within a reasonable time after a home solicitation sale has been canceled or an offer to purchase revoked, the buyer upon demand must tender to the seller any goods delivered by the seller pursuant to the sale but he is not obligated to tender at any place other than his residence. If the seller fails to demand possession of goods within a reasonable time after cancellation or revocation, the goods become the property of the buyer without obligation to pay for them. For the purpose of this section, forty days is presumed to be a reasonable time.

"(2) The buyer has a duty to take reasonable care of the goods in his possession before cancellation or revocation and for a reasonable time thereafter, during which time the goods are otherwise at the seller's risk.

"(3) If the seller has performed any services pursuant to a home solicitation sale prior to its cancellation, the seller is entitled to no compensation.

## "§ 28–3812. Limitation on creditors' remedies

"(a) This section applies to actions or other proceedings to enforce rights arising from consumer credit sales, consumer leases, and direct installment loans (other than a loan directly secured on real estate or a direct motor vehicle installment loan covered by chapter 36 of title 28, District of Columbia Code) ; and, in addition, to extortionate extensions of credit. *Ante, p. 666.*

"(b)(1) During the thirty-day period after a default consisting of a failure to pay money the creditor may not because of the default (A) accelerate the unpaid balance of the obligation, (B) bring action against the debtor, or (C) proceed against the collateral.

"(2) Unless the creditor has first (A) notified the debtor that he has elected to accelerate the unpaid balance of the obligation because of default, (B) brought action against the debtor, or (C) proceeded against the collateral, the debtor may cure a default consisting of a failure to pay money by tendering the amount of all unpaid sums due at the time of tender, without acceleration, plus any unpaid delinquency or deferral charges. Cure restores the debtor to his rights under the agreement as though the defaults cured had not occurred.

"(3) Posting of any notice required by law shall be deemed valid if mailed by certified mail to the debtor's last known address.

"(c)(1) The debtor may redeem the collateral from the creditor at any time—

"(A) within fifteen days of the creditor's taking possession of the collateral, or

"(B) thereafter until the creditor has either disposed of the collateral, entered into a contract for its disposition, or gained the right to retain the collateral in satisfaction of the debtor's obligation pursuant to the provisions on disposition of collateral in section 9–505 of subtitle I of title 28, District of Columbia Code. *77 Stat. 768. D.C. Code 28: 9-505.*

"(2) The debtor may redeem the collateral by tendering fulfillment of all obligations secured by the collateral including reasonable expenses incurred in realizing on the security interest.

"(d) Subject to the provisions in this part, the parties may agree that the creditor has the right to take possession of the collateral on default. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace and with consent of the debtor. Those who take the collateral through repossession shall be deemed the agent of the creditor, and the creditor shall be civilly liable for any of the actions of its agents.

"(e)(1) This subsection applies to consumer credit sales of goods or services and to direct installment loans secured by interests in goods.

"(2) A creditor may not maintain a proceeding for a deficiency unless he has disposed of the goods in good faith and in a commercially reasonable manner.

"(3) If the creditor repossesses or voluntarily accepts surrender of goods which were the subject of the sale and in which he has a security interest, the consumer is not personally liable to the creditor for the unpaid balance of debt arising from the sale of a commercial unit of goods of which the cash price was $2,000 or less. In that case the creditor is not obligated to resell the collateral unless the consumer has

674                    PUBLIC LAW 92-200—DEC. 17, 1971          [85 Stat.

paid 60 percent or more of the cash price and has not signed after default a statement renouncing his rights in the collateral.

"(4) If the creditor takes possession or voluntarily accepts surrender of goods which were not the subject of the sale but in which he has a security interest to secure a debt arising from a sale of goods or services or a combined sale of goods and services and the cash price of the sale was $2,000 or less, the debtor is not personally liable to the creditor for the unpaid balance of the debt arising from the sale and the creditor's duty to dispose of the collateral is governed by the provisions on disposition of collateral in section 9–505 of subtitle I of title 28, District of Columbia Code.

<div style="margin-left:-10em">77 Stat. 768.<br>D.C. Code 28:<br>9-505.</div>

"(5) If the creditor takes possession or voluntarily accepts surrender of goods in which he has a security interest to secure a debt arising from a direct installment loan and the net proceeds of the loan paid to or for the benefit of the debtor are $2,000 or less, the consumer is not personally liable to the lender for the unpaid balance of the debt arising from the loan and the lender's duty to dispose of the collateral is governed by the provisions on disposition of collateral in section 9–505 of subtitle I of title 28, District of Columbia Code.

"(6) The consumer shall be liable in damages to the creditor if the debtor has wrongfully damaged the collateral or if, after default and demand, the debtor has wrongfully failed to make collateral available to the creditor.

"(7) If the creditor elects to bring an action against the buyer for a debt arising from a consumer credit sale of goods or services, when under this section he would not be entitled to a deficiency judgment if he repossessed the collateral, and obtains judgment—

    "(A) he may not repossess the collateral, and
    "(B) the collateral is not subject to levy or sale on execution or similar proceedings pursuant to the judgment.

"(f)(1) If it is the understanding of the creditor and the debtor at the time an extension of credit is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person, the repayment of the extension of credit is unenforceable through civil judicial processes against the debtor.

"(2) If it is shown that an extension of credit was made at an annual rate exceeding 45 per centum and that the creditor then had a reputation for the use or threat of use of violence or other criminal means to cause harm to the person, reputation, or property of any person to collect extensions of credit or to punish the nonrepayment thereof, there is prima facie evidence that the extension of credit was unenforceable under paragraph (1) of this subsection.

"(g)(1) With respect to a consumer credit sale, or direct installment loan, if the court as a matter of law finds—

    "(A) the agreement to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
    "(B) any clause of the agreement to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable clause, or may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) If it is claimed or appears to the court that the agreement or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination.

"(3) For the purpose of this section, a charge or practice expressly permitted by this section is not in and of itself unconscionable in the absence of other practices and circumstances.

**"§ 28–3813. Consumers' remedies**

"(a) The remedies provided by this section shall be liberally administered to the end that the consumer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with this chapter. Except as is otherwise specifically provided where there are willful and repeated violations of this chapter consequential and special damages may be had in lieu of the specific penalties allowed, and in addition punitive damages may be had as indicated.

"(b) Any right or obligation declared by this chapter is enforceable by action unless the provision declaring it specifies a different and limited effect.

"(c) 'Transaction total' means—

"(1) in the case of transactions pursuant to open end credit plans or consumer credit transactions, the total of the following calculated as if the amount or amounts financed were paid over the maximum period of the plan or, if there is no such period, over twelve months beginning with the next billing cycle or cycles following the transaction or transactions:

"(A) the amount financed, plus any down payment or required deposit balance, and

"(B) the total finance charge, including any prepaid finance charge;

"(2) in the case of other than open end transactions or consumer credit transactions, the total of the following:

"(A) the amount financed, plus any down payment or required deposit balance, and

"(B) the amount of all precomputed or precomputable finance charge, including any prepaid finance charge.

"(d)(1) In the discretion of the court, a consumer may recover from the person violating this chapter, in addition to the damages the law otherwise allows, 10 percent of the transaction total, if applicable, or $100, whichever is greater, for violations to which this section applies.

"(2) This section also applies to all violations for which no other remedy is specifically provided.

"(e) If a consumer prevails in a suit brought under this Act, the court may assess reasonable attorney's fees in addition to any other amounts recoverable under this chapter.

"(f) Any charge, practice, term, clause, provision, security interest, or other action or conduct which can be shown to be in willful violation of the provisions of this chapter shall confer no rights or obligations enforceable by action.

**"§ 28–3814. Debt collection**

"(a) This section only applies to conduct and practices in connection with collection of obligations arising from consumer credit sales, consumer leases, and direct installment loans (other than a loan directly secured on real estate or a direct motor vehicle installment loan covered by chapter 36 of title 28).

"(b) As used in this section, the term—

"(1) 'claim' means any obligation or alleged obligation, arising from a consumer credit sale, consumer lease, or direct installment loan;

"(2) 'debt collection' means any action, conduct or practice in connection with the solicitation of claims for collection or in connection with the collection of claims, that are owed or due, or are alleged to be owed or due, a seller or lender by a consumer; and

"(3) 'debt collector' means any person engaging directly or indirectly in debt collection, and includes any person who sells or offers to sell forms represented to be a collection system, device, or scheme intended or calculated to be used to collect claims.

"(c) No debt collectors shall collect or attempt to collect any money

*Ante,* p. 666.
Definitions.

676               PUBLIC LAW 92-200–DEC. 17, 1971    [85 Stat.

alleged to be due and owing by means of any threat, coercion, or attempt to coerce in any of the following ways:

"(1) the use, or express or implicit threat of use, of violence or other criminal means, to cause harm to the person, reputation, or property of any person;

"(2) the accusation or threat to falsely accuse any person of fraud or any crime, or any conduct which, if true, would tend to disgrace such other person or in any way subject him to ridicule, or any conduct which, if true, would tend to disgrace such other person or in any way subject him to ridicule or contempt of society;

"(3) false accusations made to another person, including any credit reporting agency, that a consumer has not paid a just debt, or threat to so make such false accusations;

"(4) the threat to sell or assign to another the obligation of the consumer with an attending representation or implication that the result of such sale or assignment would be that the consumer would lose any defense to the claim or would be subjected to harsh, vindictive, or abusive collection attempts; and

"(5) the threat that nonpayment of an alleged claim will result in the arrest of any person.

"(d) No debt collector shall unreasonably oppress, harass, or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another in any of the following ways:

"(1) the use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;

"(2) the placement of telephone calls without disclosure of the caller's identity or with the intent to harass or threaten any person at the called number; and

"(3) causing expense to any person in the form of long-distance telephone tolls, telegram fees, or other charges incurred by a medium of communication, by concealment of the true purpose of the notice, letter, message, or communication.

"(e) No debt collector shall unreasonably publicize information relating to any alleged indebtedness or debtor in any of the following ways:

"(1) the communication of any false information relating to a consumer's indebtedness to any employer or his agent except where such indebtedness has been guaranteed by the employer or the employer has requested the loan giving rise to the indebtedness and except where such communication is in connection with an attachment or execution after judgments as authorized by law;

"(2) the disclosure, publication, or communication of false information relating to a consumer's indebtedness to any relative or family member of the consumer unless such person is known to the debt collector to be a member of the same household as the consumer, except through proper legal action or process or at the express and unsolicited request of the relative or family member;

"(3) the disclosure, publication, or communications of any information relating to a consumer's indebtedness by publishing or posting any list of consumers, except for the publication and distribution of 'stop lists' to point-of-sale locations where credit is extended, or by advertising for sale any claim to enforce payment thereof or in any other manner other than through proper legal action, process, or proceeding; and

"(4) the use of any form of communication to the consumer, which ordinarily may be seen by any other persons, that displays or conveys any information about the alleged claim other than the name, address, and phone number of the debt collector.

"(f) No debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers in any of the following ways:

"(1) the use of any company name, while engaged in debt collection, other than the debt collector's true company name;

"(2) the failure to clearly disclose in all written communications made to collect or attempt to collect a claim or to obtain or attempt to obtain information about a consumer, that the debt collector is attempting to collect a claim and that any information obtained will be used for that purpose;

"(3) any false representation that the debt collector has in his possession information or something of value for the consumer, that is made to solicit or discover information about the consumer;

"(4) the failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money;

"(5) any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding;

"(6) any false representation or false implication that any debt collector is vouched for, bonded, affiliated with or an instrumentality, agent, or official of the District of Columbia or any agency of the Federal or District government;

"(7) the use or distribution or sale of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by a court, an official, or any other legally constituted or authorized authority, or which creates a false impression about its source, authorization, or approval;

"(8) any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation; and

"(9) any false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business.

"(g) No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim in any of the following ways:

"(1) the seeking or obtaining of any written statement or acknowledgment in any form that specifies that a consumer's obligation is one incurred for necessaries of life where the original obligation was not in fact incurred for such necessaries;

"(2) the seeking or obtaining of any written statement or acknowledgment in any form containing an affirmation of any obligation by a consumer who has been declared bankrupt without clearly disclosing the nature and consequences of such affirmation and the fact that the consumer is not legally obligated to make such affirmation;

"(3) the collection or the attempt to collect from the consumer all or any part of the debt collector's fee or charge for services rendered;

"(4) the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless such interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the consumer or unless such interest or incidental fee, charge, or expense is expressly authorized by law; and

678    PUBLIC LAW 92-200–DEC. 17, 1971    [85 Stat.

"(5) any communication with a consumer whenever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known.

"(h) No debt collector shall use, or distribute, sell, or prepare for use, any written communication that violates or fails to conform to United States postal laws and regulations.

"(i) No debt collector shall take or accept for assignment any of the following:

"(1) an assignment of any claim for attorney's fees which have not been lawfully provided for in the writing evidencing the obligation; or

"(2) an assignment for collection of any claim upon which suit has been filed or judgment obtained, without the debt collector first making a reasonable effort to contact the attorney representing the consumer.

"(j)(1) Proof, by substantial evidence, that a debt collector has willfully violated any provision of the foregoing subsections of this section shall subject such debt collector to liability to any person affected by such violation for all damages proximately caused by the violation.

"(2) Punitive damages may be awarded to any person affected by a willful violation of the foregoing subsections of this section, when and in such amount as is deemed appropriate by the court and trier of fact.

## "§ 28–3815. Administrative enforcement

"(a) As used in this section—

"(1) 'Commissioner' means the Commissioner of the District of Columbia or his designated agent;

"(b) Compliance with the requirements imposed under this chapter shall be enforced by the Commissioner. Nothing contained herein shall be construed to affect the authority and jurisdiction of the respective agencies designated in section 108 of the Truth-in-Lending Act (82 Stat. 146 et seq.; 15 U.S.C. 1601 et seq.).

82 Stat. 150.
15 USC 1607.

## "§ 28–3816. Inconsistent laws: What law governs

"If any provision of law or regulation promulgated thereunder is inconsistent with this chapter, this chapter shall govern, unless this chapter or the inconsistent provision of the other laws specifically provides otherwise."

77 Stat. 554.

Sec. 5. Section 571 of title 16 of the District of Columbia Code is amended to read as follows:

## "§ 16–571. Definitions

"For purposes of this subchapter—

"(1) The term 'wages' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

"(2) The term 'disposable wages' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

"(3) The term 'garnishment' means any legal or equitable procedure through which the wages of any individual are required to be withheld for payment of any debt."

Sec. 6. The text of clauses (1), (2), and (3), in the first paragraph of section 16–572 of subchapter III of chapter 5 of title 16, District of Columbia Code, is amended to read as follows:

"(1) 25 per centum of his disposable wages that week, or

"(2) the amount by which his disposable wages for that week exceed thirty times the Federal minimum hourly wage prescribed by section 6(a)(1) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206) in effect at the time the wages are payable, whichever is less. In the case of wages for any pay period other than a week, the Commissioner of the District of Columbia shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2)."

SEC. 7. Subchapter III of chapter 5 of title 16, District of Columbia Code, is amended by adding the following sections:

## "§ 16–583. No garnishment before judgment

"Notwithstanding any other provision of law, prior to entry of judgment in an action against a debtor, the creditor may not obtain an interest in any property of the debtor by attachment, garnishment, or like proceedings.

## "§16–584. No discharge from employment for garnishment

"No employer shall discharge an employee for the reason that a creditor of the employee has subjected or attempted to subject unpaid earnings of the employee to garnishment or like proceedings directed to the employer for the purpose of paying a judgment."

SEC. 8. (a) The analysis of chapter 33 of title 28 of subtitle II, District of Columbia Code, is amended by adding at the end thereof the following new item:

"28–3308. Finance charge on direct installment loans."

(b) The analysis of subtitle II of title 28, District of Columbia Code, is amended by adding at the end thereof the following new items:

"36. Direct Motor Vehicle Installment Loans_____ 28–3601.
"37. Revolving Credit Accounts_____ 28–3701.
"38. Consumer Protections_____ 28–3801."

(c) The analysis of subchapter III of chapter 5 of title 16, District of Columbia Code, is amended by adding at the end thereof the following new items:

"16–583. No garnishment before judgment.
"16–584. No discharge from employment for garnishment."

SEC. 9. (a) The Act of February 4, 1913 (relating to the regulation of the business of loaning money in the District of Columbia) (D.C. Code, secs. 26–601—26–611), is amended by adding at the end of that Act the following:

"SEC. 14. (a) No provision of this Act shall apply with respect to any loan, or to the making of any loan—

"(1) to any corporation which is unable to plead any statutes against usury in any action;

"(2) at a rate of interest which does not exceed the maximum lawful rate of interest which would be applicable to such loan but for the provisions of this Act;

"(3) secured on real estate located outside of the District of Columbia;

"(4) to a borrower residing, doing business, or incorporated outside of the District of Columbia; or

"(5) greater than $10,000.

"(b) If any provision of this section or the application thereof to any person or circumstance, is held invalid, the remainder of the section, and the application of such provision to other persons or circumstances shall not be affected thereby."

*(Margin notes:)*

80 Stat. 838.

77 Stat. 554.
D.C. Code 16–571.

Money lenders, licenses.

37 Stat. 657;
77 Stat. 344.

Effective date.

37 Stat. 657.

(b) The amendment made by subsection (a) of this section shall apply with respect to any loan made, or to the making of any loan, in the District of Columbia on or after the effective date of such Act of February 4, 1913 (as specified in section 13 of such Act); except that such amendment shall not apply with respect to any loan made, or to the making of any loan, in the District of Columbia concerning which an action under such Act of February 4, 1913, has been filed in a court of competent jurisdiction on or before November 10, 1971.

Short title.

Sec. 10. This Act may be cited as the "District of Columbia Consumer Credit Protection Act of 1971".

Approved December 17, 1971.

Public Law 92-201

December 18, 1971
[H. J. Res. 1005]

JOINT RESOLUTION

Making further continuing appropriations for the fiscal year 1972, and for other purposes.

Continuing appropriations, 1972.
Ante, p. 485.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the joint resolution of July 1, 1971 (Public Law 92-38), as amended, is hereby further amended (1) by striking out "December 8, 1971" in clause (c) of section 102 and inserting in lieu thereof "February 22, 1972"; (2) by amending section 108 to read as follows:

Limitation.

"Sec. 108. Notwithstanding any other provision of this joint resolution, obligations incurred hereunder and under prior year balances for the activities hereinafter specified shall not exceed the annual rates specified herein during the period beginning December 9, 1971, and ending February 22, 1972:

| "Item | Annual rate |
|---|---|

### Title I—Foreign Assistance Act Activities

| | |
|---|---|
| Economic assistance: | |
| Worldwide, technical assistance | $165,272,000 |
| Alliance for Progress, technical assistance | 79,105,000 |
| American schools and hospitals abroad | 15,000,000 |
| International organizations and programs | 41,282,000 |
| Indus Basin Development Fund, grants | 5,000,000 |
| Indus Basin Development Fund, loans | 6,000,000 |
| Contingency fund | 31,300,000 |
| Refugee relief assistance (East Pakistan) | 100,000,000 |
| Alliance for Progress, development loans | 226,693,000 |
| Development loans | 530,779,000 |
| Administrative expenses, Agency for International Development | 47,000,000 |
| Administrative expenses, Department of State | 4,280,000 |
| Military and supporting assistance: | |
| Military assistance | 522,500,000 |
| Supporting assistance | 649,721,000 |
| Other: | |
| Overseas Private Investment Corporation, reserves | 18,750,000 |

# Council of the District of Columbia
# Report

City Hall, 14th and E Streets, N.W.    Fifth Floor    638-2223 or Government Code 137-3806

| | |
|---|---|
| **To** | All Councilmembers |
| **From** | John A. Wilson, Chairperson,<br>Committee on Public Services and Consumer Affairs |
| **Date** | March 24, 1976 |
| **Subject** | Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Act |

This bill, "to provide consumers in the District with procedures for the redress of improper trade practices, and for other purposes," was introduced by Councilmember John A. Wilson on March 4, 1976, and referred to the Committee on Public Services and Consumer Affairs. The legislation will abolish the present Office of Consumer Affairs (OCA) and establish an Office of Consumer Protection (OCP) with powers and procedures to deal administratively with consumer complaints.

A similar bill, No. 1-187, was vetoed by the Mayor on February 10, 1976. This bill is identical to Bill 1-187 as passed by the Council except:

(1)  the Mayor's appointments of the Director and administrative law judge of the Office of Consumer Protection are not subject to Council confirmation;

(2)  the Director and general counsel of the Office of Consumer Protection are not required to be District residents;

(3)  editorial corrections were made to sections 4(a)(1) and (2), 5(n), (p), (q), (r)(4), (r)(5), (t), and (w), and 6(h)(2).

On March 19, 1976, the Committee reported out the bill with two amendments noted below.

## Legislative History of OCA

The Office of Consumer Affairs, as part of the Executive Office of the Mayor, was authorized by Congress in Fiscal 1974, P.L. 93-91 approved August 14, 1973. The Office was formally established by Commissioner's Order 73-225 dated October 3, 1973. This order, which, as amended July 17, 1974, is the basic law being changed by this act, is attached to this report.

J-3172-75

Report on Bill 1-253
Page 2
March 24, 1976

### General History and Background

Starting in 1968, consumer groups in the District lobbied the Mayor and the Congress for an independent consumer protection agency in the District government, structured along the lines and authority of a "mini-FTC".

The "official" history of the Office--i.e., the history of attempts by the Executive Branch to establish such an agency--is depicted in the chart following.

# I.     FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. 1692 *et seq.*

## 15 U.S.C. § 1692. Congressional findings and declaration of purpose [FDCPA § 802]

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## 15 U.S.C. § 1692a. Definitions [FDCPA § 803]

As used in this subchapter--

(1) The term "Bureau" means the Bureau of Consumer Financial Protection.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the

subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

    (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

    (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

    (C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

    (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

    (E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

    (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

    (G) Redesignated (F)

(7) The term "location information" means a consumer"s place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

[Pub. L. No. 111-203, tit. X, § 1089(2), 124 Stat. 2092 (July 21, 2010)]

**15 U.S.C. § 1692e. False or misleading representations [FDCPA § 807]**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

      (A) the character, amount, or legal status of any debt; or
      (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

      (A) lose any claim or defense to payment of the debt; or
      (B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector‟s business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.


## 15 U.S.C. § 1692f. Unfair practices [FDCPA § 808]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector‟s intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.


## 15 U.S.C. § 1692j. Furnishing certain deceptive forms [FDCPA § 812]

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.


## 15 U.S.C. § 1692k. Civil liability [FDCPA § 813]

**(a) Amount of damages**
Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

> (1) any actual damage sustained by such person as a result of such failure;

> (2)

>> (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney"s fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney"s fees reasonable in relation to the work expended and costs.

**(b) Factors considered by court**
In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors--
(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or
(2) in any class action under subsection (a)(2)(B) of this section of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector"s noncompliance was intentional.

**(c) Intent**
A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

**(d) Jurisdiction**
An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

**(e) Advisory opinions of Bureau**
No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

[Pub. L. No. 111-203, tit. X, § 1089(1), 124 Stat. 2092 (July 21, 2010)]

**15 U.S.C. § 1692l. Administrative enforcement [FDCPA § 814]**

**(a) Federal Trade Commission**

The Federal Trade Commission shall be authorized to enforce compliance with this title, except to the extent that enforcement of the requirements imposed under this title is specifically committed to another Government agency under any of paragraphs (1) through (5) of subsection (b), subject to subtitle B of the Consumer Financial Protection Act of 2010. For purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. 41 et seq.), a violation of this title shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with this title, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce the provisions of this title, in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

**(b) Applicable provisions of law**
Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance with any requirements imposed under this subchapter shall be enforced under--

(1) section 8 of the Federal Deposit Insurance Act [12 U.S.C. § 1818], by the appropriate Federal banking agency, as defined in section 3(q) of the Federal Deposit Insurance Act (12 U.S.C. 1813(q)), with respect to--

(A) national banks, Federal savings associations, and Federal branches and Federal agencies of foreign banks;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act; and

(C) banks and State savings associations insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), and insured State branches of foreign banks;

(2) the Federal Credit Union Act [12 U.S.C. §§ 1751 et seq.], by the National Credit Union Administration with respect to any Federal credit union;

(3) subtitle IV of Title 49, by the Secretary of Transportation with respect to all carriers subject to the jurisdiction of the Surface Transportation Board;

(4) the Federal Aviation Act of 1958 [part A of subtitle VII of Title 49], by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that Act; and

(5) the Packers and Stockyards Act, 1921 [7 U.S.C. § 181 et seq.] (except as provided in section 406 of that Act [7 U.S.C. §§ 226, 227]), by the Secretary of Agriculture with respect to any activities subject to that Act; and

(6) subtitle E of the Consumer Financial Protection Act of 2010, by the Bureau, with respect to any person subject to this title.

The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).

**(c) Agency powers**

For the purpose of the exercise by any agency referred to in subsection (b) of this section of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b) of this section, each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this subchapter any other authority conferred on it by law, except as provided in subsection (d) of this section.

**(d) Rules and regulations**

Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. § 5519(a)], the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this title.

[Pub. L. No. 111-203, tit. X, § 1089(3), (4), 124 Stat. 2092 (July 21, 2010)]

## II.   DISTRICT OF COLUMBIA DEBT COLLECTION LAW, D.C. CODE 28-3814 *et seq.*

## § 28–3813. Consumers' remedies.

(a) The remedies provided by this section shall be liberally administered to the end that the consumer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with this chapter. Except as is otherwise specifically provided where there are wilful and repeated violations of this chapter consequential and special damages may be had in lieu of the specific penalties allowed, and in addition punitive damages may be had as indicated.

(b) Any right or obligation declared by this chapter is enforceable by action unless the provision declaring it specifies a different and limited effect.

(c) "Transaction total" means -

(1) in the case of transactions pursuant to open end credit plans or consumer credit transactions, the total of the following calculated as if the amount or amounts financed were paid over the maximum period of the plan or, if there is no such period, over twelve months beginning with the next billing cycle or cycles following the transaction or transactions:

(A) the amount financed, plus any down payment or required deposit balance, and

(B) the total finance charge, including any prepaid finance charge;

(2) in the case of other than open end transactions or consumer credit transactions, the total of the following:

(A) the amount financed, plus any down payment or required deposit balance, and

(B) the amount of all precomputed or precomputable finance charge, including any prepaid finance charge.

(d) (1) In the discretion of the court, a consumer may recover from the person violating this chapter, in addition to the damages the law otherwise allows, 10% of the transaction total, if applicable, or $100, whichever is greater, for violations to which this section applies.

(2) This section also applies to all violations for which no other remedy is specifically provided.

(e) If a consumer prevails in a suit brought under this chapter, the court may assess reasonable attorney's fees in addition to any other amounts recoverable under this chapter.

(f) Any charge, practice, term, clause, provision, security interest, or other action or conduct which can be shown to be in wilful violation of the provisions of this chapter shall confer no rights or obligations enforceable by action.

## § 28–3814. Debt collection.

(a) This section only applies to conduct and practices in connection with collection of obligations arising from consumer credit sales, consumer leases, and direct installment loans (other than a loan directly secured on real estate or a direct motor vehicle installment loan covered by Chapter 36 of Title 28).

(b) As used in this section, the term -

(1) "claim" means any obligation or alleged obligation, arising from a consumer credit sale, consumer lease, or direct installment loan;

(1A) "creditor" means a claimant or other person holding a claim;

(2) "debt collection" means any action, conduct or practice in connection with the solicitation of claims for collection or in connection with the collection of claims, that are owed or due, or are alleged to be owed or due, a seller or lender by a consumer; and

(3) "debt collector" means any person engaging directly or indirectly in debt collection, and includes any person who sells or offers to sell forms represented to be a collection system, device, or scheme intended or calculated to be used to collect claims.

(c) No creditor or debt collector shall collect or attempt to collect any money alleged to be due and owing by means of any threat, coercion, or attempt to coerce in any of the following ways:

(1) the use, or express or implicit threat of use, of violence or other criminal means, to cause harm to the person, reputation, or property of any person;

(2) the accusation or threat to falsely accuse any person of fraud or any crime, or any conduct which, if true, would tend to disgrace such other person or in any way subject him to ridicule, or any conduct which, if true, would tend to disgrace such other person or in any way subject him to ridicule or contempt of society;

(3) false accusations made to another person, including any credit reporting agency, that a consumer has not paid a just debt, or threat to so make such false accusations;

(4) the threat to sell or assign to another the obligation of the consumer with an attending representation or implication that the result of such sale or assignment would be that the consumer would lose any defense to the claim or would be subjected to harsh, vindictive, or abusive collection attempts; and

(5) the threat that nonpayment of an alleged claim will result in the arrest of any person.

(d) No creditor or debt collector shall unreasonably oppress, harass, or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another in any of the following ways:

(1) the use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;

(2) the placement of telephone calls without disclosure of the caller's identity or with the intent to harass or threaten any person at the called number; and

(3) causing expense to any person in the form of long-distance telephone tolls, telegram fees, or other charges incurred by a medium of communication, by concealment of the true purpose of the notice, letter, message, or communication.

(e) No creditor or debt collector shall unreasonably publicize information relating to any alleged indebtedness or debtor in any of the following ways:

(1) the communication of any false information relating to a consumer's indebtedness to any employer or his agent except where such indebtedness had been guaranteed by the employer or the employer has requested the loan giving rise to the indebtedness and except where such communication is in connection with an attachment or execution after judgments as authorized by law;

(2) the disclosure, publication, or communication of false information relating to a consumer's indebtedness to any relative or family member of the consumer unless such person is known to the creditor or debt collector to be a member of the same household as the consumer, except through proper legal action or process or at the express and unsolicited request of the relative or family member;

(3) the disclosure, publication, or communications of any information relating to a consumer's indebtedness by publishing or posting any list of consumers, except for the publication and distribution of "stop lists" to point-of-sale locations where credit is extended, or by advertising for sale any claim to enforce payment thereof or in any other manner other than through proper legal action, process, or proceeding; and

(4) the use of any form of communication to the consumer, which ordinarily may be seen by any other persons, that displays or conveys any information about the alleged claim other than the name, address, and phone number of the creditor or debt collector.

(f) No creditor or debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers in any of the following ways:

(1) the use of any company name, while engaged in debt collection, other than the creditor or debt collector's true company name;

(2) the failure to clearly disclose in all written communications made to collect or attempt to collect a claim or to obtain or attempt to obtain information about a consumer, that the creditor or debt collector is attempting to collect a claim and that any information obtained will be used for that purpose;

(3) any false representation that the creditor or debt collector has in his possession information or something of value for the consumer, that is made to solicit or discover information about the consumer;

(4) the failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money;

(5) any false representation or implication of the character, extent, or amount of a claim against a consumer, or of its status in any legal proceeding;

(6) any false representation or false implication that any creditor or debt collector is vouched for, bonded by, affiliated with or an instrumentality, agent, or official of the District of Columbia or any agency of the Federal or District government;

(7) the use or distribution or sale of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by a court, an official, or any other legally constituted or authorized authority, or which creates a false impression about its source, authorization, or approval;

(8) any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation; and

(9) any false representation or false impression about the status or true nature of or the services rendered by the creditor or debt collector or his business.

**(g)** No creditor or debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim in any of the following ways:

　**(1)** the seeking or obtaining of any written statement or acknowledgment in any form that specifies that a consumer's obligation is one incurred for necessaries of life where the original obligation was not in fact incurred for such necessaries;

　**(2)** the seeking or obtaining of any written statement or acknowledgment in any form containing an affirmation of any obligation by a consumer who has been declared bankrupt without clearly disclosing the nature and consequences of such affirmation and the fact that the consumer is not legally obligated to make such affirmation;

　**(3)** the collection or the attempt to collect from the consumer all or any part of the creditor or debt collector's fee or charge for services rendered;

　**(4)** the collection of or the attempt to collect any interest or other charge, fee, or expense incidental to the principal obligation unless such interest or incidental fee, charge, or expense is expressly authorized by the agreement creating the obligation and legally chargeable to the consumer or unless such interest or incidental fee, charge, or expense is expressly authorized by law; and

　**(5)** any communication with a consumer whenever it appears that the consumer has notified the creditor that he is represented by an attorney and the attorney's name and address are known.

**(h)** No creditor or debt collector shall use, or distribute, sell, or prepare for use, any written communication that violates or fails to conform to United States postal laws and regulations.

**(i)** No creditor or debt collector shall take or accept for assignment any of the following:

　**(1)** an assignment of any claim for attorney's fees which have not been lawfully provided for in the writing evidencing the obligation; or

　**(2)** an assignment for collection of any claim upon which suit has been filed or judgment obtained, without the creditor or debt collector first making a reasonable effort to contact the attorney representing the consumer.

**(j) (1)** Proof, by substantial evidence, that a creditor or debt collector has wilfully violated any provision of the foregoing subsections of this section shall subject such creditor or debt collector to liability to any person affected by such violation for all damages proximately caused by the violation.

(2) Punitive damages may be awarded to any person affected by a wilful violation of the foregoing subsections of this section, when and in such amount as is deemed appropriate by the court and trier of fact.

(k) No creditor, debt collector, or collection agency, or their representatives or agents shall contact consumers by telephone before 8 a.m. and after 9 p.m. EST or EDT, whichever time zone is in effect.

# III.   DISTRICT OF COLUMBIA CONSUMER PROTECTION AND PROCEDURES ACT, D.C. CODE 28-3901 *et seq.*

## § 28–3901. Definitions and purposes. (2012)

(a) As used in this chapter, the term-

(1) "person" means an individual, firm, corporation, partnership, cooperative, association, or any other organization, legal entity, or group of individuals however organized;

(2) "consumer" means <u>a person who does or would purchase</u>, lease (from), <u>or receive consumer goods or services, including a co-obligor or surety</u>, *or* <u>a person who does or would provide the economic demand for a trade practice</u>; as an adjective, "consumer" describes anything, without exception, <u>which is primarily for personal, household, or family use</u>; (*emphasis added*)

(3) "merchant" means a person, whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice;

(4) "complainant" means one or more consumers who took part in a trade practice, or one or more persons acting on behalf of (not the legal representative or other counsel of) such consumers, or the successors or assigns of such consumers or persons, once such consumers or persons complain to the Department about the trade practice;

(5) "respondent" means <u>one or more merchants alleged by a complainant to have taken part in or carried out a trade practice, or the successors or assigns of such merchants</u>, and includes other persons who may be deemed legally responsible for the trade practice; (*emphasis added*)

(6) "<u>trade practice</u>" means any act which does or would create, <u>alter</u>, repair, furnish, make available, <u>provide information about</u>, or, <u>directly or indirectly</u>, solicit or offer for <u>or effectuate</u>, <u>a sale, lease or transfer, of consumer goods or services</u>; (*emphasis added*)

(7) "<u>goods and services</u>" means any and all parts of the economic output of society, <u>at any stage</u> or related or necessary point in the economic process, and includes <u>consumer credit</u>, franchises, business opportunities, real estate transactions, and <u>consumer services of all types</u>; (*emphasis added*)

90

(8) "Department" means the Department of Consumer and Regulatory Affairs;

(9) "Director" means the Director of the Department of Consumer and Regulatory Affairs;

(10) "Chief of the Office of Compliance" means the senior administrative officer of the Department's Office of Compliance who is delegated the responsibility of carrying out certain duties specified under section 28-3905;

(11) "Office of Adjudication" means the Department's Office of Adjudication which is responsible for carrying out certain duties specified under section 28-3905;

(12) "Office of Consumer Protection" means the Department's Office of Consumer Protection which is responsible for carrying out the statutory requirements set forth in § 28-3906; and

(13) "Committee" means the Advisory Committee on Consumer Protection which is responsible for carrying out the statutory requirements set forth in section 28-3907.

(b) The purposes of this chapter are to:

(1) assure that a just mechanism exists to remedy *all* improper trade practices and deter the continuing use of such practices; (*emphasis added*)

(2) promote, through effective enforcement, fair business practices throughout the community; and

(3) educate consumers to demand high standards and seek proper redress of grievances.

(c) This chapter shall be construed and applied liberally to promote its purpose. (*emphasis added*)

## § 28–3904. Unlawful trade practices (2012)

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

**(a)** represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

**(b)** represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have;

**(c)** represent that goods are original or new if in fact they are deteriorated, altered, reconditioned, reclaimed, or second hand, or have been used;

**(d)** represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

**(e)** misrepresent as to a material fact which has a tendency to mislead;

**(f)** fail to state a material fact if such failure tends to mislead;

**(g)** disparage the goods, services, or business of another by false or misleading representations of material facts;

**(h)** advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered;

**(i)** advertise or offer goods or services without supplying reasonably expected public demand, unless the advertisement or offer discloses a limitation of quantity or other qualifying condition which has no tendency to mislead;

**(j)** make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time;

**(k)** falsely state that services, replacements, or repairs are needed;

**(l)** falsely state the reasons for offering or supplying goods or services at sale or discount prices;

**(m)** harass, or threaten a consumer with any act other than legal process, either by telephone, cards, or letters;

**(n)** cease work on, or return after ceasing work on, an electrical or mechanical apparatus, appliance, chattel or other goods, or merchandise, in other than the condition contracted for, or to impose a separate charge to reassemble or restore such an object to such a condition without notification of such charge prior to beginning work on or receiving such object;

**(o)** replace parts or components in an electrical or mechanical apparatus, appliance, chattel or other goods, or merchandise when such parts or components are not defective, unless requested by the consumer;

**(p)** falsely state or represent that repairs, alterations, modifications, or servicing have been made and receiving remuneration therefor when they have not been made;

**(q)** fail to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute;

**(r)** make or enforce unconscionable terms or provisions of sales or leases; in applying this subsection, consideration shall be given to the following, and other factors:

**(1)** knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer;

**(2)** knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased;

**(3)** gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees;

**(4)** that the person contracted for or received separate charges for insurance with respect to credit sales with the effect of making the sales, considered as a whole, unconscionable; and

**(5)** that the person has knowingly taken advantage of the inability of the consumer reasonably to protect his interests by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors;

**(s)** pass off goods or services as those of another;

**(t)** use deceptive representations or designations of geographic origin in connection with goods or services;

**(u)** represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not;

**(v)** misrepresent the authority of a salesman, representative or agent to negotiate the final terms of a transaction;

**(w)** offer for sale or distribute any consumer product which is not in conformity with an applicable consumer product safety standard or has been ruled a banned hazardous product under the federal Consumer Product Safety Act (15 U.S.C. § 2051-83), without holding a certificate issued in accordance with section 14(a) of that Act to the effect that such consumer product conforms to all applicable consumer product safety rules (unless the certificate holder knows that such consumer product does not conform), or without relying in good faith on the representation of the manufacturer or a distributor of such product that the product is not subject to a consumer product safety rule issued under that Act;

93

(x) sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Official Code, or by operation or requirement of federal law;

(y) violate any provision of the District of Columbia Consumer LayAway Plan Act (section 28-3818);

(z) violate any provision of the Rental Housing Locator Consumer Protection Act of 1979 (section 28-3819) or, if a rental housing locator, to refuse or fail to honor any obligation under a rental housing locator contract;

(z-1) violate any provision of Chapter 46 of this title;

(aa) violate any provision of sections 32-404, 32-405, 32-406, and 32-407;

(bb) refuse to provide the repairs, refunds, or replacement motor vehicles or fails to provide the disclosures of defects or damages required by the Automobile Consumer Protection Act of 1984;

(cc) violate any provision of the Real Property Credit Line Deed of Trust Act of 1987;

(dd) violate any provision of title 16 of the District of Columbia Municipal Regulations;

(ee) violate any provision of the Public Insurance Adjuster Act of 2002 [Chapter 16A of Title 31];

(ff) violate any provision of Chapter 33 of this title;

(gg) violate any provision of the Home Equity Protection Act of 2007 [Chapter 24A of Title 42]; or

(hh) fail to make a disclosure as required by § 26-1113(a-1).


## § 28–3905. Complaint procedures (2012)

(a) A case is begun by filing with the Department a complaint plainly describing a trade practice and stating the complainant's (and, if different, the consumer's) name and address, the name and address (if known) of the respondent, and such other information as the Director may require. The complaint must be in or reduced by the Director to writing. The filing of a complaint with the Department shall toll the periods for limitation of time for bringing an action as set out in section 12-301 until the complaint has been resolved through an administrative order, consent decree, or dismissal in accordance with this section or until an opportunity to arbitrate has been provided in Chapter 5 of Title 50.

**(b) (1)** Except as provided in paragraph (2) of this subsection, the Director shall investigate each such complaint and determine:

    **(A)** What trade practice actually occurred; and

    **(B)** Whether the trade practice which occurred violates any statute, regulation, rule of common law, or other law of the District of Columbia.

    **(2)** The Director may, in his or her discretion, decline to prosecute certain cases as necessary to manage the Department's caseload and control program costs.

**(b-1)** In carrying out an investigation and determination pursuant to subsection (b) of this section, the Director shall consult the respondent and such other available sources of information, and make such other efforts, as are appropriate and necessary to carry out such duties.

**(c)** If at any time the Director finds that the trade practice complained of may, in whole or in part, be a violation of law other than a law of the District of Columbia or a law within the jurisdiction of the Department, the Director may in writing so inform the complainant, respondent and officials of the District, the United States, or other jurisdiction, who would properly enforce such law.

**(d)** The director shall determine that there are, or are not, reasonable grounds to believe that a trade practice, in violation of a law of the District of Columbia within the jurisdiction of the Department, has occurred in any part or all of the case. The Director may find that there are not such reasonable grounds for any of the following reasons:

    **(1)** any violation of law which may have occurred is of a law not of the District of Columbia or not within the jurisdiction of the Department, or occurred more than three years prior to the filing of the complaint;

    **(2)** in case paragraph (1) of this subsection does not apply, no trade practice occurred in violation of any law of the District;

    **(3)** the respondent cannot be identified or located, or would not be subject to the personal jurisdiction of a District of Columbia court;

    **(4)** the complainant, to the Director's knowledge, no longer seeks redress in the case;

    **(5)** the complainant and respondent, to the Director's knowledge, have themselves reached an agreement which settles the case; or

    **(6)** the complainant can no longer be located.

95

**(d-1)** The Director may dismiss any part or all of a case to which one or more of the reasons stated in subsection (d) of this section apply. The Director shall inform all parties in writing of the determination, and, if any part or all of the case is dismissed, shall specify which of the reasons in this subsection applies to which part of the case, and such other detail as is necessary to explain the dismissal.

**(e)** The Director may attempt to settle, in accordance with subsection (h) of this section, each case for which reasonable grounds are found in accordance with subsection (d-1) of this section. After the Director's determination as to whether the complaint is within the Department's jurisdiction, in accordance with subsection (d-1) of this section, the Director shall:

**(1)** effect a consent decree;

**(2)** dismiss the case in accordance with subsection (h)(2) of this section;

**(3)** through the Chief of the Office of Compliance present to the Office of Adjudication, with copies to all parties, a brief and plain statement of each trade practice that occurred in violation of District law, the law the trade practice violates, and the relief sought from the Office of Adjudication for violation; or

**(4)** notify all parties of another action taken, with the reasons therefor stated in detail and supported by fact. Reasons may include:

**(A)** any reason listed in subsections (d)(1) through (d)(6) of this section; and

**(B)** that the presentation of a charge to the Office of Adjudication would not serve the purposes of this chapter.

**(5)** Repealed.

**(f)** When the case is transmitted to the Office of Adjudication, the Chief of the Office of Compliance shall sign, and serve the respondent, the Department's summons to answer or appear before the Office of Adjudication. Not less than 15 nor more than 90 days after such transmittal, the case shall be heard. The case shall proceed under section 10 of the District of Columbia Administrative Procedure Act (section 2-509). The Office of Adjudication may, without delaying its hearing or decision, attempt to settle the case pursuant to subsection (h) of this section, and has discretion to permit any stipulation or consent decree the parties agree to. The Director shall be a party on behalf of the complainant. Applications to intervene shall be decided as may be proper or required by law or rule. Reasonable discovery shall be freely allowed. Any finding or decision may be modified or set aside, in whole or part, before a notice of appeal is filed in the case, or the time to so file has run out.

**(g)** If, after hearing the evidence, the Office of Adjudication decides a trade practice occurred in which the respondent violated a law of the District of Columbia within the jurisdiction of the Department, such Office of Adjudication shall issue an order which:

    **(1)** shall require the respondent to cease and desist from such conduct;

    **(2)** shall, if such Office of Adjudication also decides that the consumer has been injured by the trade practice, order redress through contract damages, restitution for money, time, property or other value received from the consumer by the respondent, or through rescission, reformation, repair, replacement, or other just method;

    **(3)** shall state the number of trade practices the respondent performed in violation of law;

    **(4)** shall, absent good cause found by the Office of Adjudication, require the respondent to pay the Department its costs for investigation, negotiation, and hearing;

    **(5)** may include such other findings, stipulations, conditions, directives, and remedies including punitive damages, treble damages, or reasonable attorney's fees, as are reasonable and necessary to identify, correct, or prevent the conduct which violated District law; and

    **(6)** may be based, in whole or part, upon a violation of a law establishing or regulating a type of business, occupational or professional license or permit, and may refer the case for further proceedings to an appropriate board or commission, but may not suspend or revoke a license or permit if there is a board or commission which oversees the specific type of license or permit.

    **(h) (1)** At any time after reasonable grounds are found in accordance with subsection (d) of this section, the respondent, the Department (represented by (i) the Director prior to transmittal to the Office of Adjudication and after an order issued pursuant to subsection (f) of this section has been appealed, and (ii) the Office of Adjudication after transmittal to the Office of Adjudication and prior to such appeal), and the complainant, may agree to settle all or part of the case by a written consent decree which may:

    **(A)** include any provision described in subsection (g)(2) through (6) of this section;

    **(B)** not contain an assertion that the respondent has violated a law;

    **(C)** contain an assurance that the respondent will refrain from a trade practice;

    **(D)** bar the Department from further action in the case, or a part thereof; or

    **(E)** contain such other provisions or considerations as the parties agree to.

    **(2)** The representative of the Department shall administer the settlement proceedings, and may utilize the good offices of the Advisory Committee on Consumer Protection. All settlement

proceedings shall be informal and include all interested parties and such representatives as the parties may choose to represent them. Such proceedings shall be private, and nothing said or done, except a consent decree, shall be made public by the Department, any party, or the Advisory Committee, unless the parties agree thereto in writing. The representative of the Department may call settlement conferences. For persistent and unreasonable failure by the complainant to attend such conferences or to take part in other settlement proceedings, the Director, prior to transmittal to the Office of Adjudication, may dismiss the case.

(3) A consent decree described in paragraph (1) of this subsection may be modified by agreement of the Department, complainant and respondent.

(i) (1) An aggrieved party may appeal to the District of Columbia Court of Appeals after:

(A) the Office of Adjudication decides a case pursuant to subsection (f) of this section;

(B) all parts of a case have been dismissed by operation of subsection (d) or (e) of this section; or

(C) the Director dismisses an entire case in accordance with subsection (h)(2) of this section.

(1A) Such appeals shall be conducted in accordance with the procedures and standards of section 11 of the District of Columbia Administrative Procedure Act (section 2-510), and take into account the procedural duties placed upon the Department in this section and all actions taken by the Department in the case.

(2) An aggrieved party may appeal any ruling of the Office of Adjudication under subsection (j) of this section to the Superior Court of the District of Columbia.

(3) (A) Any person found to have executed a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department:

(i) shall be liable to the Department for a civil penalty of not exceeding $1000.00 for each violation enumerated in an order pursuant to subsection (g)(3) of this section; and

(ii) may be assessed and made liable to the Department for a civil penalty of not exceeding $1000.00 for each violation or failure to adhere to a provision, of an order described in subsection (f), (g), or (j) of this section or a consent decree described in subsection (h) of this section.

(B) The Department, the complainant, or the respondent may sue in the Superior Court of the District of Columbia for a remedy, enforcement, or assessment or collection of a civil penalty, when any violation, or failure to adhere to a provision of a consent decree described in

subsection (h) of this section, or an order described in subsection (f), (g), or (j) of this section, has occurred. The Department shall sue in that Court for assessment of a civil penalty when an order described in subsection (g) of this section has been issued and become final. A failure by the Department or any person to file suit or prosecute under this subparagraph in regard to any provision or violation of a provision of any consent decree or order, shall not constitute a waiver of such provision or any right under such provision. The Court shall levy the appropriate civil penalties, and may order, if supported by evidence, temporary, preliminary, or permanent injunctions, damages, treble damages, reasonable attorney's fees, consumer redress, or other remedy. The Court may set aside the final order if the Court determines that the Department of Consumer and Regulatory Affairs lacked jurisdiction over the respondent or that the complaint was frivolous. If, after considering an application to set aside an order of the Department of Consumer and Regulatory Affairs, the Court determines that the application was frivolous or that the Department of Consumer and Regulatory Affairs lacked jurisdiction, the Court shall award reasonable attorney's fees.

      **(C)** Application to the Court to enforce an order shall be made at no cost to the District of Columbia or the complainant.

    **(4)** The Corporation Counsel shall represent the Department in all proceedings described in this subsection.

    **(j)** If, at any time before notice of appeal from a decision made according to subsection (f) of this section is filed or the time to so file has run out, the Director believes that legal action is necessary to preserve the subject matter of the case, to prevent further injury to any party, or to enable the Department ultimately to order a full and fair remedy in the case, the Chief of the Office of Compliance shall present the matter to the Office of Adjudication, which may issue a cease and desist order to take effect immediately, or grant such other relief as will assure a just adjudication of the case, in accordance with such beliefs of the Director which are substantiated by evidence. The Office of Adjudication's ruling may be appealed to court within 7 days of notice thereof on the Director, respondent, and complainant.

    **(k)(1)** <u>A person</u>, whether acting for the interests of itself, its members, or the general public, <u>may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice</u> *<u>in violation of a law of the District of Columbia</u>* and may recover or obtain the following remedies: (*emphasis added*)

(A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(B) reasonable attorney's fees;

(C) punitive damages;

(D) an injunction against the use of the unlawful trade practice;

(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

(F) any other relief which the court deems proper.

**(2)** The remedies or penalties provided by this chapter are cumulative and in addition to other remedies or penalties provided by law. Nothing in this chapter shall prevent any person who is injured by a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department from exercising any right or seeking any remedy to which the person might be entitled or from filing any complaint with any other agency.

**(3)** Any written decision made pursuant to subsection (f) of this section is admissible as prima facie evidence of the facts stated therein.

**(4)** If a merchant files in any court a suit seeking to collect a debt arising out of a trade practice from which has also arisen a complaint filed with the Department by the defendant in the suit either before or after the suit was filed, the court shall dismiss the suit without prejudice, or remand it to the Department.

**(5)** An action brought by a person under this subsection against a nonprofit organization shall not be based on membership in such organization, membership services, training or credentialing activities, sale of publications of the nonprofit organization, medical or legal malpractice, or any other transaction, interaction, or dispute not arising from the purchase or sale of consumer goods or services in the ordinary course of business.

**(l)** The Director and Office of Adjudication may use any power granted to the Department in section 28-3903, as each reasonably deems will aid in carrying out the functions assigned to each

100

in this section. Each, while holding the primary responsibility of the Department for decision in a certain case, may join such case with others then before the Department. No case may be disposed of in a manner not expressly authorized in this section. Every complaint case filed with the Department and within its jurisdiction shall be decided in accordance with the procedures and sanctions of this section, notwithstanding that a given trade practice, at issue in the case, may be governed in whole or in part by another law which has different enforcement procedures and sanctions.

(m) (1) Whenever requested, the Department will make available to the complainant and respondent an explanation, and any other information helpful in understanding, the provisions of any consent decree to which the Department agrees, and any order or decision which the Department makes.

(2) The Director shall maintain a public index for all the cases on which the Department has made a final action or a consent decree, organized by:

(A) name of complainant;

(B) name of respondent;

(C) industry of the merchant involved;

(D) nature of the violation of District law alleged or found to exist (for example, subsection of section 28-3904 involved, or section of a licensing law involved);

(E) final disposition.

(n) There shall be established a Consumer Protection Education Fund ("Fund"). All monies awarded to or paid to the Department by operation of this section, including final judgements, consent decrees, or settlements reduced to final judgements, shall be paid into the Fund in order to further the purpose of this chapter as enumerated in § 28-3901.

(o) Every complaint case that is before the Department in accordance with this section shall proceed in confidence, except for hearings and meetings before the Office of Adjudication, until the Department makes a final action or a consent decree.

(p) The Director may file a complaint in accordance with subsection (a) of this section, on behalf of one or more consumers or as complainant, based on evidence and information gathered by the Department in carrying out this chapter. Persons not parties to but directly or indirectly intended as beneficiaries of an order described in subsection (f), (g), or (j) of this section, or a consent decree described in subsection (h) of this section, arising out of a complaint filed by the

101

Director, may enforce such order or decree in the manner provided in subsection (i)(3)(B) of this section.

**(q)** At any hearing pursuant to subsection (f) or (j) of this section, a witness has the right to be advised by counsel present at such hearing. In any process under this section, the complainant and respondent may have legal or other counsel for representation and advice.

**(r)** All cases for which complaints were filed before March 5, 1981, may be presented to and heard by the Office of Adjudication notwithstanding the time limits previously provided in section 28-3905(d), 28-3905(e), and 28-3905(f) for the investigation and transmittal of cases to the Office of Adjudication, and for the hearing of cases by the Office of Adjudication.

## § 28–3909. Restraining prohibited acts.

**(a)** Notwithstanding any provision of law to the contrary, if the Corporation Counsel has reason to believe that any person is using or intends to use any method, act, or practice in violation of section 28-3803, 28-3805, 28-3807, 28-3810, 28-3811, 28-3812, <u>28-3814</u>, 28-3817, 28-3818, 28-3819, or 28-3904, and if it is in the public interest, the Corporation Counsel, in the name of the District of Columbia, may petition the Superior Court of the District of Columbia to issue a temporary or permanent injunction against the use of the method, act, or practice. In any action under this section, the Corporation Counsel shall not be required to prove damages and the injunction shall be issued without bond. The Corporation Counsel may recover restitution for property lost or damages suffered by consumers <u>as a consequence of the unlawful act or practice</u>. (*emphasis added*)

**(b)** In addition, in an action under this section, the Corporation Counsel may recover a civil penalty of not more than $1,000 for each violation, the costs of the action, and reasonable attorney's fees.

**(c)** The Corporation Counsel may also:

**(1)** represent the interests of consumers before administrative and regulatory agencies and legislative bodies;

**(2)** assist, advise, and cooperate with private, local, and federal agencies and officials to protect and promote the interests of consumers;

**(3)** assist, develop, and conduct programs of consumer education and information through public hearings, meetings, publications, or other materials prepared for distribution to consumers;

102

**(4)** undertake activities to encourage local business and industry to maintain high standards of honesty, fair business practices, and public responsibility in the production, promotion, and sale of consumer goods and services and in the extension of consumer credit;

**(5)** perform other functions and duties which are consistent with the purposes or provisions of this chapter, and with the Corporation's Counsel's role as *parens patriae* , which may be necessary or appropriate to protect and promote the welfare of consumers;

**(6)** negotiate and enter into agreements for compliance by merchants with the provisions of this chapter; or

**(7)** publicize its own actions taken in the interests of consumers.

## Subchapter XVII Delinquent Debt Recovery

## § 1-350.10. Consumer Protection.

The Central Collection Unit and any outside parties it engages to collect delinquent debt shall fully comply with the Fair Debt Collection Practices Act, approved September 20, 1977 (91 Stat. 874; 15 U.S.C. § 1692 et seq.), Chapter 39 of Title 28 [§ 28-3901 et seq.], and all other federal and District laws and rules that *govern* collection of delinquent debt.

## RULES

## D.C. App. R. 49(a)

**Rule 49. Unauthorized Practice of Law.**

**(a) General Rule.** No person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules.

**(4) "Hold out as authorized or competent to practice law in the District of Columbia"** means to indicate in any manner to any other person that one is competent, authorized, or available to practice law from an office or location in the District of Columbia. Among the characterizations which give such an indication are "Esq.," "lawyer," "attorney at law," "counselor at law," "contract lawyer," "trial or legal advocate," "legal representative," "legal advocate," and "judge."

## Rule 4.3 of the Rules of Professional Conduct

When a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding.

# FEDERAL RULES

## Fed. R. Civ. P. 12(c)

(c) MOTION FOR JUDGMENT ON THE PLEADINGS. After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings

## Fed.R.Civ.P. 26(c)(3)

*Awarding Expenses*. Rule 37(a)(5) applies to the award of expenses.

## Fed.R.Civ.P. 37(a)(5)

### (5) Payment of Expenses; Protective Orders.

(A) *If the Motion Is Granted* (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
(iii) other circumstances make an award of expenses unjust.

(B) *If the Motion Is Denied*. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

# Unpublished Opinion

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARDINO, | |
| Plaintiff, | **Hon. Dennis M. Cavanaugh** |
| v. | **OPINION** |
| DAVID SEAN DUFEK, | Civil Action No. 11-cv-0901 (DMC)(JAD) |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the motion of David Dufek (hereinafter, "Defendant") filed on April 19th, 2011 to dismiss Joseph Ardino's (hereinafter "Plaintiff") complaint (ECF No. 1). Pursuant to Fed. R. Civ. P. 78, stating that the court has the authority to determine the motions on briefs without oral hearings, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's motion to dismiss (ECF No. 4) is **denied**.

## I.    BACKGROUND

On December 17th, 2009, Defendant sent a letter to Plaintiff seeking to recover a debt Plaintiff allegedly owed to CACH, LLC (hereinafter, the "Dufek Letter"). (Pl.'s Compl. Ex. A,

1

Feb. 17, 2011, ECF No. 1). Defendant is an attorney licensed in the state of California. (Def.'s Mot. to Dismiss 1, Apr. 19, 2011, ECF No. 4-1). The Dufek Letter, typewritten on law office letterhead, states that "this office has been retained to collect the debt owed by [Plaintiff]..." in an amount of $5,283.61. (Pl.'s Compl. Ex. A). The Dufek Letter further states that Plaintiff should "remit payment" to the Law Office of David Dufek or utilize http://dufeklaw.com to make payment online. Id. Additionally, the Dufek Letter states that "[u]nder Federal Law" Plaintiff had thirty days to either dispute in writing the debt, in which case the law office would "obtain and mail...proof of the debt owed," or fail to dispute the debt, in which case the law office would assume the debt's validity. Id. Finally, the Dufek Letter noted that upon "request in writing," the attorney's office would furnish the Plaintiff with information about the original creditor. Id. The letter is signed by "David Sean Dufek" and underneath the signature reads, "Attorney David Sean Dufek." Id.

Plaintiff alleges that the Dufek Letter constitutes an abusive, deceptive and unfair tactic under the Fair Debt Collection Practices Act. See 15 U.S.C. § 1692e (1996). Plaintiff states that the Dufek Letter led him to believe that an attorney was involved in collection of the alleged debt. (Pl.'s Compl. ¶ 18). Moreover, Plaintiff states his belief was that an attorney could and would take legal action against him based on the alleged debt, if payment was not made. Id. ¶¶ 19-21.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss, the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

2

The Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, when their truth is assumed, those factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555. Plaintiff's obligation "requires more than labels and conclusions." Id. at 545. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." M & M Stone Co. v. Pa., 388 Fed.Appx. 156, 162 (3d Cir. 2010).

## III.    DISCUSSION

The Fair Debt Collection Practices Act ("FDCPA") prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt" and is a remedial statute construed broadly by the Courts. 15 U.S.C. § 1692e (1996). The FDCPA specifically prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney" and any "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. §§ 1692e(3) and (5) (1996). The Third Circuit has determined that the appropriate standard for analyzing communications

3

Case 2:11-cv-00901-DMC-MF    Document 75    Filed 11/30/11    Page 4 of 5 PageID: 55

between lendors and debtors is the "least sophisticated debtor" standard. <u>Lesher v. Law Offices of Mitchell N. Kay</u>, No. 10-3194, 2011 WL 2450964, at *1 (3d Cir. June 21, 2011) (citing <u>Wilson v. Quadramed Corp.</u>, 225 F.3d 350, 354-55 (3d Cir. 2000)).  Under the "least sophisticated debtor" standard, "bizarre and idiosyncratic interpretations" are not entertained, however, the court assumes that the debtor "[preserves] a quotient of reasonableness" and "a basic level of understanding and willingness to read with care." <u>Id.</u>

The Third Circuit recently decided a case involving strikingly similar facts utilizing the "least sophisticated debtor" standard under the FDCPA.  The <u>Lesher</u> case involves a letter from an attorney (hereinafter, the "Kay Letter") that is almost identical to the Dufek Letter.  The Kay Letter included statements declaring that the law office was handling the debt collection for another, and directed Plaintiff to address all payment to the "Law Offices of Mitchell N. Kay, P.C." or pay online at www.lawofmnk.com.  <u>Lesher</u>, 2011 WL 2450964, at *1.  The Kay Letter further informed of a thirty day period to dispute and offered to mail verification of the debt upon request in writing.  <u>Id.</u>  Reviewing <u>de novo</u>, the Third Circuit agreed with the District Court's decision to grant summary judgment in Plaintiff's favor.  <u>Lesher</u>, 724 F.Supp.2d 503 (M.D. Pa. 2010), <u>aff'd</u>, 2011 WL 2450964 (3d Cir. 2011).

The Third Circuit reasoned that the letter mislead the Plaintiff in <u>Lesher</u> to "believe that an attorney was involved in collecting his debt, and that the attorney could, and would, take legal action against him." <u>Lesher</u>, 2011 WL 2450964, at *2.  The Third Circuit's reasoning was guided by the Court's use of the "least sophisticated debtor" standard which provides merely a low threshold upon with the Court assumed that the debtor preserved "a quotient of

4

reasonableness" while at the same time refusing to entertain bizarre or idiosyncratic interpretations of the communications. Id.

Given the strikingly similar nature of the Dufek Letter to the Kay Letter and proper application of the "least sophisticated debtor" standard in this case, Plaintiff's contention that an attorney had reviewed his file and had determined that he was a candidate for legal action could plausibly be deemed reasonable upon further factual findings. As this Court must view the allegations in the complaint and pleadings in the light most favorable to the Plaintiff, Plaintiff has raised allegations of entitlement to relief under 15 U.S.C. § 1692e above a speculative level.

## IV.    CONCLUSION

For the foregoing reasons expressed herein, Defendant's motion to dismiss Plaintiff's complaint is **denied**.

Dennis M. Cavanaugh, U.S.D.J.

Date:      November **30**, 2011
Orig.:     Clerk
cc:        All Counsel of Record
           Joseph A. Dickson, U.S.M.J.